*J. H. Baker*, for appellant.

---

## BENNETT and Others *v.* WELCH.

SPECIFIC PERFORMANCE—LACHES.—Where twenty-three years have elapsed from the date of a contract for the purchase of real estate, during thirteen years of which no payments were made by the purchaser, the delay will be *prima facie* sufficient to prevent a court of equity from interfering

to give relief by a decree for specific performance, in favor of the party thus in default.

SAME.—But where, in such case, the vendor has preserved the vigor of the contract by the pendency of an action to enforce a lien for the purchase money, and the vendee, answering to that action, offers to perform, and asks specific performance against the vendor, the latter cannot be heard to object on account of the delay, because, by his own act, he has continuously recognized the obligation of the contract.

APPEAL from the *Tippecanoe* Circuit Court.

FRAZER, C. J.—In 1844 *Welch* filed his bill in chancery against the appellees, then infants, who were the heirs at law of *William Bennett*, deceased, also against the widow and administrator of *Bennett*, for the purpose of subjecting to sale certain lands in *Tippecanoe* and *Fountain* counties, alleged to have been sold by him to *Bennett* in his lifetime, in 1838, to satisfy the unpaid purchase money claimed to be due him. He obtained a decree, under which, in 1845, the lands in *Tippecanoe* county were sold to him for $4,000—not sufficient to satisfy the decree—and having obtained a deed under his purchase, he went into possession of the lands in both counties. In 1846, he filed a claim against *Bennett's* estate for the balance of his decree, which was allowed, and in 1848 he received from the administrator upon that claim $313 09. In 1856, the present appellants, and the other defendants in the chancery cause, removed it to this court by writ of error, and after it had remained here five years the decree was, in 1861, reversed, and the cause remanded. The appellants then filed a counter-claim, averring that their ancestor had paid a larger part of the purchase money than was alleged in the bill; that *Welch* had been in possession of the lands since 1845, and asking that the rents and profits since that date be charged to *Welch*, in satisfaction of so much of the purchase money, claiming that the whole would thus be satisfied, but offering to pay any sum that might be found due him when ascertained, and praying that thereupon he be compelled to convey in specific performance of his contract with their ancestor.

*Welch* subsequently amended his original complaint, and afterward demurred to the counter-claim, and then, at a later date, 1862, dismissed his complaint. The counter-claim was variously amended. A demurrer to it was overruled; an answer was then filed, a reply to the answer, and a demurrer to the reply, which was by the court overruled to the reply but sustained to the counter-claim, and final judgment thereon rendered for *Welch.*

The only question before us arises upon the action of the court below upon the demurrer, and that question is, was the counter-claim sufficient? It seems very plain to us that the allegations of the answer to the counter-claim must be excluded from consideration in the decision of this question. Whether the pleading to which the demurrer was carried back and sustained was good, must be determined upon its own averments, in connection with those of the original complaint, and can in no measure depend upon any subsequent pleading. This observation is called for by the fact that the question is argued on behalf of the appellee, and seems, from an opinion of the judge below, appended to the appellee's brief, to have been decided, as if the averments of the subsequent pleading were to be deemed a part of the counter-claim in considering the question.

Time was not of the essence of the contract. This is conceded and need not therefore be illustrated. The contract was one which, *prima facie*, would properly justify the exercise of the power of a court of equity in compelling its specific performance. This too is not questioned. But it is insisted that the laches of the appellants preclude the exercise of this power in their behalf in this case. Twenty-three years had elapsed, during which a large part of the purchase money had remained unpaid, and during the last thirteen years of that time no payments whatever had been made by the appellants or the administrator of their ancestor. It is scarcely to be controverted that such delay would be *prima facie* sufficient to prevent a court of equity

from interposing to give relief by a decree for specific performance, in favor of parties thus in default.

But here the appellee, as late as 1848, received money upon the contract. His appearance in this court, as late as 1861, resisting a reversal of his decree, was an affirmance of the contract. His prosecution of that case in the court below after its reversal here, until about one year after the counter-claim was filed, was an effort on his part to enforce the contract. His action sought its specific performance as certainly as did the counter-claim. Both parties concurred then in desiring and seeking its performance, and treating it as obligatory in equity, until the moment when the appellee dismissed his suit, in 1862. Until that event, the controversy between the parties was not whether the contract should be held obligatory, for each sought to compel the other to perform it, and thereby recognized its binding force against himself. But the amount due the appellee was contested by the appellants, and they sought to charge him with the rents and profits during the time he was in possession under his purchase by virtue of the decree, which he resisted.

Where the mere lapse of time has been held to bar an application for specific performance, it has usually been on the ground that an abandonment of the contract could be inferred, or a purpose to speculate on the defendant by delay. And there can be no doubt that the delay in the case before us was abundantly sufficient to have justified the appellee in regarding the purchase as having been abandoned. But by seeking to enforce it, he preserved its vigor for his own benefit, and it would not be creditable to our jurisprudence if he could be sustained in saying that he shall nevertheless be discharged from its performance by his own mere volition. While seeking to compel a specific performance, and continuing thereby to admit an obligation to perform on his part, his acts were certainly inconsistent with an intention to object to doing so on account of the lapse of time, and this must be deemed a waiver of that

objection. Thus the doctrine is stated by Mr. *Fry*, in his treatise on specific performance, sec. 745, on the authority of *King* v. *Wilson*, 6 Beav. 124. The same rule is recognized in *Rector* v. *Price*, 1 Mo. 380, and indeed seems to be not only fairly deducible from the authorities, but eminently just and reasonable. That a party who brings his suit to compel his adversary to perform, when the adversary takes him at his word, and in court offers to perform whatever can be required, and asks that the plaintiff may be held also to perform, may thereupon refuse, ought never to be heard of in a court of justice. It would be simple trifling, and, it seems to us, ought not to be tolerated.

The case of *Green* v. *Russell*, 5 Hill 183, cited on behalf of the appellee, does not appear to us to be inconsistent with the views already expressed. That case was trover for a span of horses. The defense was that the horses were the defendant's, having been obtained from him by a contract of purchase which was void for fraud. The plaintiff having shown that the defendant had, at one time, sued for the purchase money of the horses before it was due under the contract, his suit however resulting in nothing, on account of defects in the proceedings, insisted that the defendant was estopped from questioning the validity of the contract. It was held that the suit did not estop the defendant from showing that the contract was void for fraud. This was undoubtedly correct, for the sufficient reason, if no other had existed, that the previous suit was itself in disaffirmance of the contract, and not, as in the case before us, to enforce it. The view we have expressed in this case does not rest upon the ground of estoppel, and in no respect involves the doctrine upon that subject. We merely hold the appellant bound in equity because he had, by his own acts, continuously recognized that obligation, and sought to enforce the correlative obligation of the other party.

The judgment is reversed, with costs, and the cause remanded, with directions to the court below to set aside its

action on the demurrer, and its subsequent proceedings, and proceed according to this opinion.

GREGORY, J., having been of counsel, did not sit in this case.

*R. C. Gregory* and *R. Jones, jr.*, for appellants.

*Z. Baird, J. A. Stein* and *J. J. Jones*, for appellee.