# WHEELING.

BALLARD *v.* BALLARD *et al.*

Submitted January 15, 1885.—Decided March 28, 1885.

1. When an executory contract for the sale of land is unobjectionable in its nature and circumstances, it is as much a matter of course

for a court of equity to decree its specific execution, as it is for a court of law to give damages for its breach.  (p. 473.)

2. A written contract for the sale of land may be rescinded by a subsequent parol agreement by the parties, but to make such agreement effectual it must have been fully executed and be established by clear and conclusive proof.  (p. 473.)

3. Time is not in courts of equity considered as of the essence of the contract for the sale of land, unless it is made so by the express stipulations of the parties or arises by implication from the very nature of the property or the avowed objects of the vendor or vendee.  (p. 478.)

4. Where the delay in such cases is merely in the failure to pay the purchase-money at the time specified in the contract, equity will not for that cause alone refuse specific execution to the vendee for the plain reason, that it admits of adequate compensation ascertained by law in the form of interest.  (p. 478.)

5. The doctrine, that a bill in equity for the specific execution of a contract rests in the sound discretion of the court in view of the facts and circumstances and does not require its interposition *ex debito justitiæ*, has a very limited application in modern courts of equity.  The rules and limitations which govern such courts are no less rigorous and definite than those governing courts of law.  (p. 479.)

6. A cause in which the specific execution of a contract for the sale of land is held to have been properly decreed by the circuit court.

The facts of the case are stated in the opinion of the Court.

*A. N. Campbell* and *A. C. Houston* for appellant.

*Frank Hereford* for appellee B. F. Ballard.

SNYDER, JUDGE:

Suit in equity instituted in the circuit court of Monroe county, August 30, 1879, by B. F. Ballard against the heirs at law and devisees of Jeremiah Ballard, deceased, to enforce the specific execution of a written contract for the purchase of a tract of about 240 acres of land situate in said county, entered into March 21, 1876, between the plaintiff and his father, the said Jeremiah Ballard.  After the making of said contract the said Jeremiah made a voluntary conveyance of

forty acres of said 240 acres to his son, Riley Ballard, and on April 16, 1879, he died testate leaving then living seven children, to-wit: Baldwin, Lewis and Riley Ballard, Elizabeth Campbell, Margaret Shanklin, Mary Hecht and the plaintiff and the children of a deceased son. By his will, which is dated April 1, 1879, and was probated April 21, 1879, he devised all the residue of said land, being all he then owned, to the defendants, Jabin Noel and Sarah Noel his wife, the said Sarah being a grand-daughter of the testator and a daughter of the said Riley Ballard.

The defendants, Noel and wife and Elizabeth Campbell answered, and the bill was taken for confessed as to all the other adult defendants. General replications were filed to said answers.

Noel and wife by their answer claim the land under the devise to them and aver that subsequent to the making of the contract of sale to the plaintiff the said Jeremiah and the plaintiff entered into a separate and distinct parol agreement, which they carried into execution, and by which the said contract was wholly rescinded and abandoned.

Elizabeth Campbell in her answer denies that said contract had ever been rescinded or abandoned, and avers that about the time it was made she became entitled to a part of the purchase-money, which the contract provides was to be paid to or for her, and that subsequently her father assigned to her the benefit of the whole of the purchase-money, none of which has been paid; and she prays that the contract may be specifically executed and the land subjected to the payment of the money due thereon to her.

Numerous depositions were taken by the respective parties, and the cause coming on to be heard on March 22, 1883, the court decided that the plaintiff was entitled to a specific execution of the contract upon the payment of all the purchase-money, and thereupon entered a decree to that effect. From this decree the defendants, Noel and wife, appealed.

The only assignment of error is, that the contract had been rescinded by the parties, and that, therefore, the court erred in decreeing its specific execution.

The contract itself seems to be unobjectionable. Its terms are specific and definite, both as to the consideration and the

subject.   The vendor, the father, bound himself to make "a good and lawful deed" to the plaintiff "upon the payment of the purchase-money, two thousand dollars, *balance* after deducting therefrom the amount to be paid for Elizabeth Campbell upon my order, four hundred dollars to be paid against the 15th day of May, 1876, *the residue* is to be paid in two annual payments on the 15th day of May, 1877, and 15th day of May, 1878." If the words "balance" and "residue" are interpreted as referring to the same thing, as the context clearly requires they should be, the terms are entirely free from ambiguity and mean that the plaintiff was to pay $2,000.00 for the land, of which $400.00 was to be for Elizabeth Campbell upon the order of the vendor, and the balance or residue in two annual payments, the payments to be made at the dates specified.

It is undisputed that soon after the date of the contract the plaintiff was placed in possession of the land.   There can not be then any question about the validity of this contract.   It was in writing, definite in its terms, made between competent parties and completed by the delivery of possession of the subject.   In such cases it is as much a matter of course for courts of equity to decree a specific performance of the contract, as it is for courts of law to give damages for a breach of it.—*Abbott* v. *L'Hommedieu*, 10 W. Va. 677.

The enquiry before us then is reduced to the simple question, whether under all the circumstances the said contract was, by a subsequent parol agreement and the conduct of the parties, rescinded and abandoned?   This is a question of fact rather than of law; for it can not be doubted that a written contract for the sale of land may be rescinded by a subsequent parol agreement; but to make such agreement effectual it must have been executed by the parties and be established by "clear and conclusive proof."—*Phelps* v. *Seely*, 22 Grat. 573, 585 and cases cited.

The controversy thus presented is represented on the one side by the appellants and Riley Ballard, who claims part of the land under a subsequent voluntary conveyance, and on the other side by the plaintiff and the other heirs at law of the said Jeremiah Ballard, deceased.   The burden of showing such rescission is necessarily on the parties who assert it.

To establish the rescission in this case, the evidence is exclusively parol and very conflicting and unsatisfactory on the most material points.

The following facts seem to be conceded: At the time of the sale in March, 1876, the father, the vendor, owned no other land; he was about 87 years of age and was living with his daughter, Elizabeth Campbell, on the farm; that a short time before the plaintiff, in contemplation of making this purchase, entered into a written contract with the said Elizabeth Campbell, by which he bound himself to pay for, and secure, to the said Elizabeth the title to, 70 acres of land on Bush creek, which she had contracted to buy from Samuel D. Pack, and in consideration therefor she had agreed to release all her interest in her father's estate to the plaintiff, and give possession of the house and farm, on which she was then living with her father, to plaintiff on or before March 15, 1876; that soon thereafter she did move off the farm and the plaintiff was placed in possession of it and continued to live there, his father living with him, until about November 1, 1876, when the plaintiff moved off to a house in the neighborhood where he lived until the following spring—he then went to Missouri, leaving his family in the latter house until in the fall of 1877, when he returned and moved his family to Missouri where he continued to reside until this suit was brought. But before moving from the farm in controversy in November 1876, by some arrangement, as to the terms of which, and whether made by the plaintiff or his father with Noel and·wife, the testimony is conflicting, the said Noel and wife moved into the house with the father and took charge of the farm and remained there until after the death of the father which occurred in April, 1879, as before stated. It does not appear that the plaintiff after the fall of 1876 had any control or management of the farm, unless Noel was placed there by him as his agent and tenant, as he claims, but which is denied by Noel. It is not attempted to show that there was any agreement to rescind the contract of sale to the plaintiff other than by the declarations and conduct of the plaintiff and the acts of his father. As to all other matters the testimony is contradictory and inconclusive, except that it does appear that but a very small

portion of the purchase-money was paid by the plaintiff—a small portion having been paid to Elizabeth Campbell—until after the death of the father and just before this suit was brought, when Baldwin Ballard, the administrator of his father, agreed to pay the purchase-money for the plaintiff and admitted that he then held it as such administrator.

As to the conflicting evidence it is claimed by the appellants and testified to by them, that the plaintiff, just before he moved off the farm in November, 1876, told them that he was going to move off the place, that he had given up or destroyed his contract and had nothing to do with the place and did not care who came there, so somebody came who would be good to his father; that he had given up his contract and was going to leave the place, because his brothers, Baldwin and Lewis, came and made a fuss about it, and that he would not live in a fuss; that after this the old man sent for them, and they went there and lived there until the old man died without any contract with either the old man or the plaintiff, but they admit that the plaintiff was to draw up a contract which he never did. They also showed that Baldwin and Lewis Ballard did make a fuss about the plaintiff having the contract for the land. A number of other witnesses testify, that in conversations had by them with the plaintiff the plaintiff stated, that he had destroyed the contract and given up the place and intended to move to Missouri and live there. The witnesses testify to these and similar declarations alleged to have been made by the plaintiff with a stereotyped uniformity that makes their testimony improbable and suspicious. Some of them, however, state facts and circumstances which tend to show that declarations of the character deposed to were made to them by the plaintiff, but they are not in my judgment sufficient to prove conclusively, that such declarations were fully understood or reported, or that they necessarily refer to the contract.

On the other side the plaintiff produces the contract unmutilated and thus shows positively, that it never was given up or destroyed, and that therefore the appellants and their witnesses were necessarily mistaken as to the plaintiff's declaration, that it had been destroyed, or else the plaintiff made false declarations to them; and there is much in the

testimony to show, that the plaintiff, on account of the annoyance and dissatisfaction of his brothers may have given out the impression, that the contract was destroyed in order to have peace. But the evidence plainly shows, that the plaintiff never did surrender or destroy the contract. In his testimony he positively denies, that he ever did rescind or agree to rescind the contract, or that he ever abandoned or intended to abandon it, and his testimony in this respect as well as in others is supported by the testimony of other witnesses. The plaintiff testifies, that, after he took possession under his contract of purchase, he repaired the house by putting a new roof on it, made some fence and hired hands to do other work on the place, that he paid $56.50 on the purchase-money to Elizabeth Campbell on the order of his father; that by the contract with his father he was to pay $400.00 to Samuel D. Pack for the said Elizabeth, and that he had a debt against Pack at that time for $63.00 and afterwards purchased a judgment on him for $570.00; that by the written order of his father he was to pay $400.00 of the residue of the purchase-money to his sister, Mary Hecht, and the balance to some of his brothers, and that these orders were left in *the paper case* of his father; that these latter orders he has never paid otherwise than by getting his brother Baldwin, as administrator of his father, to assume and pay the same to himself as such administrator, which he did before this suit was brought, and that said Baldwin still has the money as such administrator. In regard to the possession of the land the plaintiff testifies, that, at the time he made the purchase, by a separate contract between him and his father he agreed to keep and support his father during his life, and that the use of the farm was to be the consideration of this contract; that, after his brothers made so much fuss about his having the land, he determined to go away; that then with the consent of his father he got Noel and wife to move upon the farm to take care of his father, and that they agreed to do so for the use of the farm; that when he moved to Missouri he requested his brother John, who since died, to look after his father and the farm, and that he never intended to live permanently in Missouri, but wanted to get away from the fuss and left a part of his household goods

here when he moved away; that he may have said that he had abandoned this contract to live with his father during his life, but he never said to any one, that. he had destroyed or abandoned the contract for the purchase of the land, which was a separate and distinct contract. This is the substance of the material testimony of the plaintiff, and there is evidence of other witnesses tending to corroborate parts of it; but I do not deem it important to review the testimony any further on either side. I have given enough of it to show the conflicting and contradictory character of it. Any conclusion, that could be drawn from it by this Court, would necessarily be conjectural and unsatisfactory. It is plainly too uncertain and inconclusive to warrant a reversal of the circuit court, unless the conceded or uncontroverted facts of themselves show some valid legal objection to the specific execution of the contract.

The principal ground alleged against granting the relief asked by the plaintiff is his delay and *laches* in the performance of his part of the contract. The only part of the contract, that the plaintiff failed to fulfill according to its terms, which could in any way prejudice the rights of the vendor, was the non-payment of the purchase-money. The rule in equity is, that an executory contract for the sale of land at once makes the purchaser the owner of the land and the vendor the owner of the purchase-money. After the contract the vendor is the trustee of the legal estate for the vendee. It is upon the principle of the transmission by the contract of an actual equitable estate, and the impressing of a trust upon the legal estate for the benefit of the vendee, that the doctrine of specific performance of contracts for the sale of land mainly depends. Equity looks upon things agreed to be done as actually performed. *Richer* v. *Selin*, 8 Serg. & R. 425. If, therefore, the vendor should again sell the estate, of which he is such trustee, he will be considered as selling it for the benefit of the vendor, and the second vendee, if he has notice, or the conveyance to him is without valuable consideration, will hold the estate subject to the first contract and be compelled to convey it to the first purchaser. *Hoagland* v. *Latonrette*, 1 Green's Chy. 254; *Murray* v. *Ballou*, 1 Johns. Chy. 566, 581. In reference to this doctrine it is stated in the

American Notes to *Seaton* v. *Slade*, 2 Lead. Cas. Eq. 1041, that, " It results from the principal above stated, that as the immediate effect of this contract is to vest the ownership of the land in the vendee and that of the purchase-money in the vendor, so the right thus acquired will not be forfeited by the failure to execute a conveyance or pay the purchase-money at the appointed time, unless the circumstances or terms employed are such as to take the case out of the general rule. In other words the contract, although executory in form, is regarded by the chancellor as executed in fact and consequently within the rule which would be applied at law, if the vendor had given a deed."

In *DeCamp* v. *Feay*, 5 Serg. & R. 323, Gibson, Judge, said : "Where time admits of compensation, as it perhaps always does where the lapse of it arises from money not having been paid at a particular day, it is never an essential part of the agreement."

This Court in *Abbott* v. *L'Hommedieu*, 10 W. Va. 677, held, that: "Time is not in courts of equity considered, ordinarily, of the essence of the contract for the sale of land, and especially as to the payment of the purchase-money. Perhaps there may be circumstances or terms employed such as to take the case out of the general rule."

There is no doubt that time may be of the essense of the contract of sale. It may be made so by the express stipulations of the parties, or it may arise by implication from the very nature of the property or the avowed objects of the seller or purchaser. But where it is not made so by the terms of the contract or the understood object of the sale, it will not be so regarded. And in cases of specific execution of contracts, lapse of time will not be held to be material, where no injury results from the delay which does not admit of compensation. Where the delay is merely in the non-payment of the purchase-money at the time specified in the contract, equity will not for that cause alone refuse specific execution. The agreement to pay in such case will be regarded as simply a naked covenant to pay money at a particular day, and this will not make time the essence of the contract, for the plain reason that it admits of adequate compensation ascertained by law in the form of interest.—*De*

*Camp* v. *Feay*, 5 Serg. & R. 328; *Bennett* v. *Welch*, 25 Ind. 140; 2 Lead. Cas. Eq. 1116.

In the case at bar it is clear that time was not made the essence of the contract, either by the express stipulation of the parties or the objects and purposes of the sale. The contract itself and all the attendant facts and circumstances show that the payment of the purchase-money was a condition subsequent, and the rule is well settled that the breach of such condition will not of itself avoid the contract. In this case the interest on the money will afford full and adequate compensation for the delay, and therefore the non-payment at the time stipulated is no sufficient ground to deny the relief asked by the plaintiff.

It is further claimed by the appellants, that every bill for specific execution is an application to the sound discretion of the court, not requiring its interposition *ex debito justitiæ*, but resting in its discretion upon all the circumstances, and that upon the whole facts shown by the record in this cause, the court should in the exercise of its discretion and in good conscience deny relief to the plaintiff. The sound discretion referred to in this legal proposition is not by any means so broad and arbitrary, as its language would seem to import. It is a proposition handed down from the old chancery courts of England, which may have been literally enforced by the then chancellors who acted without fixed rules and according to their abstract notions of justice, but it has very little force or application in modern equity-courts and practice. The rules and limitations, which govern the present equity courts, are no less absolute and defined than are those governing courts of law. Arbitrary discretion belongs to neither. Both are controlled by established and well settled doctrines. It is this principle which is the foundation of the rule before stated, that where the contract sought to be enforced is in its nature and circumstances unobjectionable, it is as much a matter of course for courts of equity to decree a specific performance of it as it is for courts of law to award damages for a breach of it. 2 Story's Eq. 3751; *West Virginia O. & O. L. Company* v. *Vinal*, 14 W. Va. 639.

We have already seen that the contract under consideration is in itself valid and free from objection, and that the

480           BALLARD *v.* BALLARD.          [Sup. Ct.

delay in the payment of the purchase-money is no ground for refusing relief to the plaintiff, it therefore only remains to determine whether the other grounds relied on by the appellants, that is, the change in the situation of the parties and the alleged abandonment of the premises by the plaintiff, are such as ought to preclude the relief prayed in the bill.

It must be kept in mind, that, the plaintiff having shown a valid contract between competent parties, and the appellants not assailing the validity of the contract but sserting in avoidance that it was subsequently rescinded by the parties, the burden of establishing the rescission of the contract rests upon the appellants. This being the attitude of the contestants, according to well settled principles regarding the application of evidence the evidence of the appellants, so far as it conflicts with that of the plaintiff, must, unless it plainly preponderates, be disregarded. Applying this rule, there is a clear failure on the part of the appellants to prove that the plaintiff ever abandoned or rescinded the contract of sale. The plaintiff's evidence is that he placed the appellants, Noel and wife, in possession of the property under a contract which necessarily made them either his agents or tenants. And as they held the possession of the land until this suit was brought, the plaintiff through them was in possession all the time. And they being such tenants or agents of the plaintiff, it is their fault, if they by their declarations or conduct permitted the vendor, who was living with them, to remain in ignorance of their relation to the plaintiff, and thereby induce him to devise the land to them. Or, if on the other hand, the vendor was informed that the appellants were in possession under the plaintiff, then he had no reason to believe the plaintiff had abandoned the contract, and his conveyance of a part of the land to Riley Ballard and his devise of the residue to the appellants was a wilful attempt to repudiate his contract with the plaintiff. So in either event the appellants are in no position to complain of the enforcement of the contract by the plaintiff in this suit.

There are other grounds why this contract should not be rescinded, which I deem it unnecessary to refer to, because in my

view of the whole case the decree of the circuit court should be affirmed for the reasons already stated; and it is so ordered.

AFFIRMED.