# Robinson · et al. v. Pierce et al.

### and

# Stone v. Robinson et al.

### and

# Pierce et al. v. Robinson et al.

*Bill in Equity to Enforce a Trust in Real Estate; and Actions of Ejectment.*

| 118 | 273 |
| 121 | 313 |
| 118 | 273 |
| 128 | 349 |
| 128 | 389 |
| 118 | 273 |
| h131 | 416 |
| 118 | 273 |
| 132 | 203 |
| 118 | 273 |
| 135 | 138 |
| 118 | 273 |
| 141 | 514 |
| 141 | 515 |

1. *Trusts and trustees; estate acquired by trustee.*—A trustee, irrespective of the estate the instrument purports to convey,

takes under such instrument that quantum of the legal estate which is necessary to discharge the declared powers and duties of the trust and no more and no less.

2. *Same; same; legal estate passes into cestui que trust when trustee ceases to be active.*—Whatever may be the limitations imposed by the instrument creating a trust, and whatever estate the trustee takes in the incipiency of the trust, the legal estate in the trustee is divested out of him and passes into the *cestui que trust,* upon the instant the duties and powers of the trust, from any cause whatever, cease to be active or cease to require the legal title in the trustee.

3. *Same; same.*—A power given to a trustee by the terms of the instrument creating the trust, to sell the estate in fee, invests the trustee with the legal title in fee; and this is true, even where the trust to sell is on a contingency.

4. *Same; same; when legal estate conveyed.*—Where an estate is given to a trustee in fee upon trusts that do not exhaust the whole estate and a power is super-added which can only be exercised by the trustee conveying in fee simple, the trustee acquires a fee simple title to the estate; and upon a conveyance by the trustee the estate so conveyed will be sustained by the fee in the trustee, and not by the mere power conferred by the instrument creating the trust.

5. *Same; same; purchaser from trustee acquires legal title.*—At common law the legal estate in the hands of the trustee has precisely the same properties, characteristics and incidents as if the trustee had been the absolute beneficial owner, and being invested with the legal title all conveyances by the trustee, whether to an innocent purchaser or not, or whether in contravention of the trust or not, operate upon the legal title and vest it in the grantee.

6. *Same; same; rights of cestui que trust enforceable in equity.* Since at common law a trustee is invested with the legal title to the trust estate and all conveyances by him, whether in breach of the trust or not, operate upon the legal title invested in the grantee, his conveyance is, therefore, valid at law, and the rights of the *cestui que trust* upon a breach of the trust by the trustee, can only be protected by resort to a court of equity to compel the grantee to respect and execute the trust as the original trustee should have done.

7. *Same; same; same; case at bar.*—Where land is conveyed in trust for the benefit of the grantor's daughter for life, with remainder to certain of her children, and the trustee is given, by the terms of the instrument, the power to sell said lands on the request of the life tenant in writing, and to invest the proceeds of said sale in property to be held in the same manner as that conveyed, a conveyance executed by said trustee,

[Robinson *et al.* v. Pierce *et al.;* and Stone v. Robinson *et al.;* and Pierce *et al.* v. Robinson *et al.*]

though infected with palpable breaches of trust apparent upon the face of the conveyance itself, is, in a court of law, a valid execution of the trust, passing the legal title in fee to the premises to the grantee, and the only remedy of the beneficiaries of the trust for redress of the breaches of the trust committed by the trustee and his vendees, is resort to a court of equity.

8. *Same; same; right of grantees to maintain and defend action of ejectment.*—A conveyance executed by a trustee, though infected with breaches of the trust apparent upon the face of the conveyance itself, is a valid execution of the trust, passing the legal title in fee to the premises to the grantees, upon which they can maintain or defend an action of ejectment.

9. *Same; same; when right to maintain bill accrues.*—Where land is conveyed in trust for the benefit of a life tenant with remainder over to heirs of the life tenant, and in the instrument creating the trust the trustee is given the power to sell, upon the written request of the life tenant, and invest the proceeds of said sale in property to be held under the same trust, ir the trustee in the execution of the power of sale makes a conveyance of the land, which is in breach of the trust, such conveyance passes the legal title in fee, and the right of the remaindermen to resort to a court of equity to protect their interest and to compel the grantee to respect and execute the trust as the original trustee should have done, accrues immediately upon the commission of the breach of trust; and this is true, even thoug_i the life estate was not terminated by the death of the life tenant.

10. *Same; same; same; limitations of actions.*—Where a trustee, in breach of a trust sells lands which were conveyed to him for the benefit of a life tenant, with remainder over to the heirs of the life tenant, the remaindermen's right to maintain a bill for the establishment of a trust accrues at once, and if they fail to seek redress in a court of equity for forty years after the conveyance was made by the trustee, the right to ao so is barred; and this is true, even though the life tenant dies within the year prior to the filing of such bill.

(COLEMAN, J., *dissenting*, holds that the deed of trust of a trustee, showing upon its face that it was made in direct violation of the power vested in the trustee, does not divest the estate of the remaindermen, and that upon the falling in of the life estate, the remaindermen are entitled to assert and recover the estate given to them by the grantor in the deed of trust; and that the statute of limitations does not begin to run against the remaindermen until the termination of the life estate.)

[Robinson *et al.* v. Pierce *et al.;* and Stone v. Robinson *et al.;* and Pierce *et al.* v. Robinson *et al.*]

APPEAL from the Chancery Court of Montgomery. Heard before the Hon. JOHN A. FOSTER.

APPEALS from the Circuit Court of Montgomery. Tried before the Hon. JOHN R. TYSON.

The first of these cases was a bill filed by the appellants against the appellees; and the two other cases were actions of ejectment brought by the complainants in said bills against the defendants in the respective suits. In the chancery suit an appeal was taken from the decree of the chancellor holding that the complainants were not entitled to the relief, and ordering the bill dismissed. The chancery suit was pending in this court, on application for rehearing, at the time of the institution of the ejectment suits; and subsequently appeals were taken in the ejectment suits from judgments rendered therein in favor of the plaintiffs, respectively. The same questions are involved in each of the suits, and they are submitted in this court together. The facts of the case are sufficiently stated in the opinion.

PETTUS & PETTUS, W. S. THORINGTON, ALEX T. LONDON and PHARES COLEMAN, for Stone and Pierce.—1. When real estate is conveyed by deed, will, or mortgage, and power is given to the grantee to sell and convey, a fee in the real estate so conveyed is thereby vested in such grantee. In other words, the legal title passes by such conveyance. This, for the obvious reason, that to convey a fee, the grantor must himself be the owner of a fee. No one can convey a greater legal title in lands than he himself possesses.—*Blagrave v. Blagrave,* 4 Exches. 549, 568; *Doe ex Dem. Keen v. Walbank,* 2 B. & Adolph. 554, 562; *Watson v. Pearson,* 2 Exch. 581, 594; *Shaw v. Weigh,* 2 Strange, (798) 801; *Gibson v. Ld. Montford,* 1 Ves. Sr. 484; *Watkins v. Frederick,* 11 Ho. of L. 358; *Chamberlain v. Thompson,* 10 Conn. 243; *Fisher v. Fields,* 10 Johns. 505; *Cleveland v. Hallett,* 6 Cush. 403; *Hawkins v. Chapman,* 36 Md. 83; *Spessard v. Rohrer,* 9 Gill. 261; *Huckabee v. Billingsly,* 16 Ala. 414; 1 Perry on Trusts, §315; 18 Amer. & Eng. Encyc. of Law, 904 and note 1; *Carrigan v. Drake,* 15 S. E.

Rep. 341; *Goodrich v. Proctor,* 1 Gray (Mass.) 569. It is unimportant that the power of disposition is contingent or discretionary. The legal title still vests.—*Gibson v. Lord Montford,* 1 Ves. Sr. 484, 490-91; Lewin on Trusts, (3d Am. ed.), p. 250. This author says: "A trust to sell, even on a contingency, confers a fee simple as indispensable to the execution of the trust." Even a mortgage, with power of sale, vests the legal fee in the mortgagee.—*Welsh v. Phillips,* 54 Ala. 309, 314; *Toomer v. Randolph,* 60 Ala. 356; *Slaughter v. Swift,* 67 Ala. 496; *Farris v. Houston,* 74 Ala. 162, 169; *Garland v. Watson, Ib.* 323; *Coffey v. Hunt,* 75 Ala. 236; *Kelly v. Longshore,* 78 Ala. 203; *Richardson v. Dunn,* 79 Ala. 167.

2. The legal title being in the trustee, passed by his deed (Mrs. Robinson concurring by joining in the deed) to the purchaser Wright. This is none the less so because the purchase money was paid to Mrs. Robinson instead of the trustee. For it is thoroughly settled that a conveyance from the trustee will pass the legal title, although made in breach of the trust. In such case the purchaser becomes charged with the trusts by construction, and the remedy of the *cestui que trust* is, not to recover the land, but to charge it in the hands of the grantee by appropriate proceedings in equity. The *cestui que trust* is as powerless in a court of law after a conveyance, as before; for no change is made that invests him with the legal estate; and it is only the legal estate of which a court of law can take cognizance. *Huckabee v. Billingsley,* 16 Ala. 414; *Dawson v. Ramser,* 58 Ala. 573; *Milhous v. Dunham,* 78 Ala. 48; *Hairston v. Dobbs,* 80 Ala. 589; *Gale v. Messing,* 20 Me. 461; s. c. 64 Amer. Dec. 197; *May v. LeClaire,* 11 Wall. 217; *Canoy v. Troutman,* 7 Ired. L. (N. C.) 155, (action of ejectment); *Dawson v. Hayden,* 67 Ill. 52, (action of ejectment); *Graham v. Anderson,* 42 Ill. 231; *Reese v. Allen,* 5 Gilm. (Ill.) 231; *Bank of U. S. v. Binning,* 4 Cranch C. C. 81; *Koster v. Burke,* 81 Ill. 436; *Hannibal &c. R. R. Co. v. Green,* 68 Mo. 177; 1 Perry on Trusts, §328; 2 Perry on Trusts, §814; *Stall v. City of Cincinnati,* 16 Ohio St. 169, 177.

3. But the conveyance affects materially the *equitable* rights of the *cestui que trust* or remainderman. The

original trustee, stands discharged, except as to accountability for the breach. The trust, which before the conveyance, had been an *express* trust, remains no longer an express trust. It is changed into a trust by construction, in the hands of the purchaser. As regards the *right* to enforce it, it remains the same; but the changed character of the trust, changes the time within which it must be enforced. Against the trust while it was *express,* the statute of limitations did not run, and the doctrine of prescription did not apply. But both the statute and prescription may be invoked by the purchaser—the constructive trustee, even as against persons, who, but for the sale, would have been remaindermen.—*Townsend v. Warren,* 1 Br. C. C. 554. *Bonny v. Ridgard,* 1 Cox, 145, 149; *Beckford v. Wade,* 17 Ves. 87, 93; *Sockey v. Sockey,* Pr. Cr. 518; *Collard v. Hare,* 2 Rom. 675; *Cholmondelay v. Clinton,* 2 J. & W. 190; *Atty. Gen. v. Fishmongers Co.,* 2 Beav. 588; s. c. 5 M. & Cr. 15; *Andrew v. Rigley,* 4 Bro. C. C. 124, 135; *Portlock v. Gardner,* 1 Hare, 504; Lewin on Trusts, (2 Am. ed.), p. 580. In the last citation it is said: "It is a well known rule that as between *cestui que trust* and (the trustee of an express) trust no length of time is a bar; for, from the privity existing between them, the possession of one is the possession of the other, and there is no adverse title. It has hence been argued, that as the person into whose hands the estate is followed is also, by construction of law, a trustee, the *cestui que trust* is entitled to the benefit of the rule, and is not precluded by mere lapse of time from establishing his claim. But the authorities to the contrary are clear and express, and can not leave a doubt."

"It is certainly true," said Sir W. Grant, "that no time bars a *direct* trust; but if it is meant to be asserted that a court of equity allows a man to make out a case of *constructive trust* at any distance of time after the facts and circumstances happened out of which it arises, I am not aware that there is any ground for a doctrine so fatal to the security of the property as that would be; so far from it, that not only in circumstances where the length of time would render it extremely difficult to ascertain the true state of the fact,

but where the true state of the fact is easily ascertained, and where it is perfectly clear that relief would have originally been given upon the ground of constructive trust, it is refused to the party who, after long acquiescence comes into a court of equity to ask that relief."—*Beckford v. Wade,* 17 Ves. 97.

To summarize: Purchasing the property from the trustee, Welsh, and obtaining his conveyance and the written assent of Mrs. Robinson, there was a strict compliance with the requirements of the power, except that the purchase money was recited to have been paid to Mrs. R., instead of Welsh, the trustee. The title having been in Welsh, and conveyed by him to Wright, this payment to the wrong person could not invalidate the deed *as a transfer of title.* The proof of this is made manifest by the indisputable proposition, that if Mrs. Robinson, after receiving the money, had turned it over to Welsh, or, if she had procured it to be invested in other property on like trusts, no one would deny that Wright's title would thereby be made impregnable before any tribunal. And yet, such could not be the effect, if the deed were void, or inoperative in its inception. An inoperative deed can not be converted into a transfer or conveyance of the legal title by extrinsic matters *in pais.* The effect of the payment of the purchase money to Mrs. R. instead of Welsh was not to prevent the operative effect of the deed as a transfer of title. Its whole effect was to fasten a charge and implied trust on the property for the amount of the purchase price, $3,000, improperly diverted from the purposes of the express trust. And Wright, having participated in the misappropriation of the funds, received and held the title of the property subject to that charge—an implied trust. Any one succeeding to his right, can occupy no higher ground than he stood on, in consequence of the notice his deed furnished, of the improper payment of the purchase money to Mrs. Robinson instead of Welsh. Such were the rights and such the liabilities of the parties and of the property, when viewed from the original standpoint. The right of the beneficiaries to complain of this breach of trust originated then and there, and limitation and

·[Robinson *et al.* v. Pierce *et al.;* and Stone v. Robinson *et al.;* and Pierce *et al.* v. Robinson *et al.*]

prescription against its assertion commenced to run at that time. The present actions are, therefore, barred. *Rhodes v. Turner,* 21 Ala. 210; *Gantt v. Phillips,* 23 Ala. 275; *Lay v. Lawson,* 23 Ala. 377; *Barnett v. Torrence,* 23 Ala. 463; *Harvey v. Thorpe,* 28 Ala. 250; *McArthur v. Carrie,* 32 Ala. 75; *Milton v. Haden,* 32 Ala. 30; *Blackwell v. Blackwell,* 33 Ala. 57; *Wyatt v. Scott,* 33 Ala. 318; *Austin v. Jordan,* 35 Ala. 642; *Roundtree v. Brantley,* 34 Ala. 551; *Nelson v. Goree,* 34 Ala. 580; *Harrison v. Heflin,* 54 Ala. 552; *Goodwyn v. Baldwin,* 59 Ala. 127; *Fleming v. Gilmer,* 35 Ala. 62; *Harrison v. Harrison,* 39 Ala. 489; *Phillippi v. Phillippi,* 61 Ala. 41; *Molton v. Henderson,* 62 Ala. 423; *Marston v. Rowe,* 39 Ala. 722; *Worley v. High,* 40 Ala. 171; *Baker v. Pruitt,* 64 Ala. 551; *Garrett v. Garrett,* 69 Ala. 429; *White v. Hutchings,* 40 Ala. 253; *Kirby v. Kirby,* 40 Ala. 492; *Walker v. Crawford,* 70 Ala. 567; *Matthews v. McDade,* 72 Ala. 377; *McCartney v. Bone,* 40 Ala. 533; *Foster v. Chamberlain,* 41 Ala. 158; *Kelly v. Hancock,* 75 Ala. 229; *Gosson v. Ladd,* 77 Ala. 223; *Ware v. Curry,* 64 Ala. 274; *Holt v. Wilson,* 75 Ala. 58; *Smith v. Gillam,* 80 Ala. 296; *Long v. Parmer,* 81 Ala. 384; *Bozeman v. Bozeman,* 82 Ala. 398; *Woodstock I. Co. v. Fullenwider,* 87 Ala. 584; *Ross v. Goodwin,* 88 Ala. 390; *Duncan v. Williams,* 89 Ala. 341; *Werborn v. Austin,* 82 Ala. 498; *Davis v. M. & C. R. R. Co.,* 87 Ala. 390; *Lansden v. Bone,* 90 Ala. 446; *Knabe v. Burden,* 88 Ala. 436; *Semple v. Glenn,* 91 Ala. 245; *Lowery v. Davis,* 8. So. Rep. 79; *Johnson v. Johnson,* 5 Cow. 74; *Bradstreet v. Clarke,* 12 Wend. 602; *Andrews v. Sparhawk,* 13 Pick. 400.

But there is the highest authority for another doctrine which is fatal to the complainants, whether they sue at law or in equity; and this, without reference to the statute of limitations or prescription.

The only infirmity alleged to exist in the conveyance from the trustee and Mrs. Robinson, is that the purchase money was paid to the life tenant, Mrs. R. This, it is claimed, was a breach of the trust.

Where the purchaser has paid full value and was guilty of no fraud, the mere fact that the money was paid to a person other than the trustee will not constitute a breach of trust, when it appears that the trustee

ratified and sanctioned the payment by joining officially in the conveyance. In such case, and after a long lapse of time, during which all the parties to the transaction have died, the courts will treat the payment as good, on the idea that the purchaser had the right to presume that some arrangement existed between the trustee and the person receiving the money, for reinvestment consistently with the trust.—*Norman v. Towne,* 130 Mass. 52; *Hope v. Liddell,* 21 Beav. 183, 202; *Townsend v. Warren,* 1 Jones & Lat. p. 221 (a) ; *Bowen v. Evans,* 2 Hof. L. Rep. 257; Code of Ala. §1843; *Bonny v. Ridgard,* 1 Cox, 145, 149; *Sockey v. Sockey,* Pr. Ch. 518; *Collard v. Hare,* 2 Rom. 675; *Cholmondeley v. Clinton,* 2 J. & W. 190; *Atty. Gen. v. Fishmongers Co.* 2 Beav. 588; s. c. 5. M. & Cr. 15; *Portlock v. Gardner,* 1 Hare, 594; *Ashton v. Atlantic Bk.,* 3 Allen, 217.

GUNTER & GUNTER, for Robinson, *et al.*—1. Granting, for the sake of argument, that the remainders in this case were equitable, the conveyances by the trustee, carrying on their faces notice that they were made in fraud of the rights of the reversionary interests, can, therefore, have no effect in a court of equity. All conveyances made by a trustee, in breach of the trust, are utterly disregarded by a court of equity, whatever may be the effect of such conveyances in a court of common law. Notwithstanding such conveyances of the legal estate by the trustee, the *cestui que trust* can deal with the equitable right as giving him the entire power over the substantial and beneficial interest in the property. If the grantee of a trustee is not a purchaser for a valuable consideration, or if he purchases with notice of the trust, unless the sale was authorized, he, if he acquires no title whatever, merely takes the place of his grantor and becomes chargeable with the execution of the trust to the same extent that such trustee was chargeable before the transfer. The rule is that "the trust property may be followed by the owner as long as it can be traced and identified, until it falls into the hands of *bona fide* purchasers for value without notice." In this case, therefore, all conveyances by Welsh, the trustee, bearing on their faces that they were made in breach of the trust, did not, *per se,* affect the rights of the remaindermen in equity. So far as the remainder-

men were concerned, the grantors held the property affected by the trust, the same as if it had remained with Welsh.—1 Perry on Trusts, §321; Underhill on Trusts and Trustees, 485, note, 2; 28 Amer. & Eng. Encyc. of Law, 88 and notes; 27 Amer. & Eng. Encyc. of Law, 250-1 *et seq.* and notes; *Wolffe v. State,* 79 Ala. 206; *Nat. Bank v. Ins. Co.,* 104 U. S. 54; *Pennell v. Delfell,* 4 DeG. M. & G. 372; *May v. LeClaire,* 11 Wall. 217-235.

2. Since the life estate fell in, the remaindermen are entitled to recover in their several actions. Where the legal estate, in connection with an equitable remainder, after the life estate is conveyed in fraud of the equitable right to convey, the remaindermen hold only an equitable interest, and they are under no obligation to institute a suit to preserve their right before the life estate falls in. Their right of action does not accrue until after the termination of the life estate.—2 Perry on Trusts, §860; 2 Story's Eq. Jurisprudence, §1520; 1 Brick. Dig. 698, §852. It is true the equitable title may be exposed to the danger, in many instances, of being lost from the legal title passing into the hands of *bona fide* purchasers without notice. But if the conveyance of the legal title is made with notice to the purchaser of the equitable limitation on that title, and the conveyance is not made to subserve that interest, but to defraud it, the equitable limitation remains in all respects unaffected and the legal title still stands, as it stood before, in an attitude of strict servitude to the equitable interest.—1 Lewin on Trusts, 246; 2 Lewin on Trusts, 864; Underhill on Trusts and Trustees, 485 and notes; *Jones v. Shaddock,* 41 Ala. 262; *Lee v. Lee,* 67 Ala. 406; 2 Spence Eq. Jur. 197; 27 Amer. & Eng. Encyc. of Law, (1st ed.), pp. 250-251; 28 Amer. & Eng. Encyc. of Law, 88. In 2 Perry on Trusts, section 860, it is said: "But in these cases, the right of the *cestui que trust* can not be barred until his right falls into possession. If, therefore, the *cestui que trust* holds in remainder or reversion, the statute will not begin to run until his right to the possession falls in by the determination of the particular estate."—*Wilson v. Moore,* 1 M. & K. 73.

3. *Laches.* There are two kinds of laches. One, the mere lapse of time; the other, "acquiescence in special

conditions and circumstances, which render it inequit-
able to enforce the demand."—*Ashurst v. Peck*, 101 Ala.
508; *Galliher v. Cadwell*, 145 U. S. 372; *Rives v. Morris*,
108 Ala. 527. The first is a defense peculiar to equity,
and is the equitable bar raised by that court against
stale demands in analogy to the statute of limitations
where there is no statute applicable.—2 Story's Eq. Jur.
§1520. This period in this class of laches is never
shorter than the period of the statute of limitations to
corresponding legal rights, and is judicially fixed at
twenty years after the accrual of the cause of action.
It is founded on the idea of the neglect of the assertion
of a known right for so long a period as to give rise to
the just presumption of abandonment, and that because
of the change in conditions and relations during this
long period of delay it would be unjust to premit its as-
sertion. And it, therefore, has no application to rever-
sioners and remaindermen until their right of action ac-
crues.—2 Perry on Trusts, §§850, 860; 1 Lewin on
Trusts, 379; 2 Lewin on Trusts, 923; 12 Amer. & Eng.
Encyc. of Law, 568; 13 Amer. & Eng. Encyc. of Law,
720; *Bank v. Nelson*, 106 Ala. 542; *Scruggs v. Decatur
M. & L. Co.*, 86 Ala. 173.

4. The second kind of laches is a species of estoppel,
in which the lapse of time is only one of the ingredients,
or facts, making out the defense.

And in applying an estoppel, of course, the rules gov-
erning in such cases must prevail. One of which is,
that it must be certain to every intent. There are three
kinds only of estoppels. By record, by deed, and *in
pais*. There is no record here, and there is no estoppel
by deed. The deed of the trustee, not being in pur-
suance of the trust, or for the remaindermen, but in
fraud of the trust, does not raise any estoppel in equity.

The estoppel, if any, then, is *in pais*. Such an estop-
pel, says Mr. Bigelow, arises (1) from contract, (2) in-
dependently of contract, from act or conduct which has
induced a change of position in accordance with the
real or apparent intention of the party against whom
the estoppel is alleged.—Big. on Estoppel, (5th ed.),
451. No contract by or in behalf of these remaindermen
is alleged; therefore, if there is any estoppel *in pais*

against them it arises from conduct, which has reasonably induced such a change of position by the other parties as to make it inequitable to enforce the claim.

Such "an estoppel is a legal consequence—a right—arising from acts or conduct," which acts or conduct are established, or may be established in whole or in part, by the facts of acquiescence or ratification, which themselves may be helped to be made out by the lapse of time operating upon "a situation incomplete in its legal aspect, *i. e.,* not yet attended with its full legal consequences."—Bigelow on Estoppel, (5th ed.), 457, 694.

It is this kind of lapse of time, or laches, with which we now have to deal, and which alone could have been meant to be applied to this case. And in all cases in which lapse of time is used as an argument against relief which otherwise would be just, the validity of the defense must be tried upon principles substantially equitable.—*Lindsay Petroleum Co. v. Hurd,* L. R. 5 P. C. 239; *Erlanger v. Phosphate Co.,* 3 App. Cas. 1279; *Galliher v. Cadwell,* 145 U. S. 368. No special conditions are here set up showing the inequity of permitting the remaindermen to recover.

If laches or staleness, then, is to be urged as a defense here, it cannot be of this latter kind any more than of the first kind, because there is no ingredient of such an estoppel alleged or shown.—Big. on Estoppel, (5th ed.), 570. And we have seen that the general plea of staleness can have no application to remaindermen who sue within the period of the statute of limitations after the particular estate determines.—Authorities *supra.*

The rule as just above announced is not affected or changed under the doctrine of election open to persons who have been injured or whose rights have been invaded, to choose between inconsistent rights. While the rule affords an option betweeen different rights or remainders as one of the first instances for the benefit of plaintiffs, the binding nature of the choice constituting an election is for the protection of the defendants. In this case there was no obligation to reject the sale, because it was not made for the remaindermen, nor in pursuance of the authority to sell. There was no ac-

ceptance of the proceeds, and there is no tacit confirmation of the sale. The sale was, as it stood, bad in equity, unless it was confirmed ,and mere silence did not confirm it, because silence as to ability to disturb the possession or vacate the sale was imposed from the fact of the remaindermen's right being in remainder. *Goodman v. Winter,* 64 Ala. 434; *Shorter v. Frazer,* 64 Ala. 74; *Ramey v. Green,* 18 Ala. 771; *Lyde v. Taylor,* 17 Ala. 270; *Woodstock v. Fullenwider,* 13 Amer. St. Rep. 78, notes; *Allen v. DeGroodt,* 14 Amer. St. Rep. 628.

5. A trust under a conveyance in fee, which is short of the fee, but does not exhaust it, is not extended to a power to convey for purposes distinct from the active trust; and a power to sell, distinct from the trust of conveyance, does not prevent the estate in remainder from vesting under the statute of uses, though the conveyance is in fee to the trustee. Where the trust only extended to the life estate, there was no duty of the trustee, as such, requiring the fee in any event. In this case there was a mere power in words superadded to convey for re-investment.—*Fenwick v. Potts,* 8 DeG. M. & G. 506; *Poad v. Watson,* 37 Eng. Law and Eq. 112; *Cockerell v. Cholmeley,* 1 C. & F. 60; 2 Lewin on Trusts, §§857-863-4; *Gray v. Lewis,* 8 L. R. Eq. 526-543; *Wilson v. Moore,* 1 M. & K. 73; *Hill v. Simpson,* 7 Ves. 152; *May v. LeClaire,* 11 Wall. 217; *Wimbish M. M. B. & L. Asso.* 69 Ala. 575; *LeNeve v. LeNeve,* 2 L. Eq. Cas. 109.

6. A common law power under the statute of uses to sell another man's estate for re-investment is not properly or well executed, and does not pass the legal title when the fraud in the power and the breach of the trust are disclosed on the face of the deed. When a conditional power is given to deal with another man's title and estate, there is an implication that not only forms must be strictly complied with, but that honesty and fair dealing shall also be observed; and it is clear law that a departure from the power in the last should be, as it is, more fatal than in the first, even in a court of law. *Jackson v. Crafts,* 18 Johns. 110; *Harris v. Strodl,* 132 N. Y. 392; *Russell v. Russell,* 36 N. Y. 581; *Allen v. De-Witt,* 3 N. Y. 276; *Syracuse Bank v. Holden,* 105 N. Y.

415; *Scholle v. Scholle,* 113 N. Y. 261; 2 Washb. on Real Prop. 278; 2 Wharton on Evidence, §§1334, 1353; Lawson on Presumptive Evidence, 276-7; Bailey's Onus Probandi, 257.

HEAD, J.—On the 30th day of April, 1847, John Falconer, in consideration of $900 paid by Mary Jane Robinson, bargained, sold and conveyed, by deed in fee, with warranty, unto Thomas Welsh, the lands in controversy, situate in the city of Montgomery, Alabama, "in trust and for the sole and separate use and benefit of the said Mary Jane Robinson during her natural life, and, at her death, to the issue of the said Mary Jane Robinson, by her marriage with her present husband, Seth Robinson, free from all liability for the debts, contracts of her present or any future husband, with the power to bargain and sell and such assurances to make of the same to any person, on request of said Mary Jane Robinson, in writing, and invest the proceeds of the sale thereof in such property as the said Mary Jane Robinson may select, and the same to be held subject, in like manner, to the uses and trusts hereinbefore stated."

On the 30th day of January, 1854, as the deed recites, said "Thomas Welsh, trustee for Mary Jane Robinson, for and in consideration of three thousand dollars, to the said Mary Jane Robinson in hand paid, by Nathnaiel H. Wright, the receipt whereof is hereby acknowledged," by deed in fee, with warranty, granted, bargained, sold, enfeoffed and confirmed unto the said Nathaniel H. Wright, a certain part of said lands. This deed was signed and sealed by "Thomas Welsh, trustee," and by said Mary Jane Robinson. At the same time, Seth Robinson, the husband of said Mary Jane, executed a quit claim deed to said premises to said Wright. By mesne conveyances from Wright, this property was, in March, 1873, duly conveyed to the defendant, George W. Stone, vesting in him all the title of the said Wright. Immediately after the execution of the Welsh deed to Wright, in 1854, he, Wright, took possession of the granted premises, as rightful owner, and he and those succeeding to his right and possession, including the defendant, Stone, have since held independent and adverse possession thereof.

On the first day of June, 1858, the said Thomas Welsh and his wife, by deed, quit-claimed all right, title and interest, in the remaining portion of said lands, to said Seth Robinson; and, at the same time, Seth Robinson and his wife, the said Mary Jane Robinson, for and in consideration of thirty-five hundred dollars paid by Mary C. Pierce to the said Seth Robinson, conveyed the same by deed, in fee, with warranty, to said Mary C. Pierce, who went into immediate possession as owner, and held independent adverse possession thereof, until her death in 1889.

The said Mary Jane Robinson died in December, 1889.

On the 5th day of August, 1890, a bill was filed in the chancery court by the remaindermen created by the Falconer deed, against the devisees of said Mary C. Pierce and against the said George W. Stone, setting up alleged breaches of trust on the part of Welsh, the trustee, known to, and participated in by the said several purchasers from him, and known to said Stone, in that the purchase money was not, in either case, received and invested by Welsh, as trustee, as required by the terms of the trust, but that the same was suffered to be received, and was received, in the one case, by Mrs. Robinson, and in the other, by her husband; and the bill avers that he, Welsh, died many years ago without leaving any estate, and without ever having received anything whatever for or on account of the said sales of said trust property; and without ever making, and without any one else making, any reinvestment whatever of the proceeds of either of said sales. The prayer was that complainants be decreed to be entitled to said lands; that the several holders thereof be required to convey the same to them, and that an account of the value of the use and occupation of said property since the death of said Mary Jane Robinson be taken and the defendants decreed to pay the same, and for general relief. The respondents set up, in bar, *inter alia*, *laches* of complainants, and staleness of demand.

The cause coming on for hearing before us, on appeal, upon consideration of the questions and line of argument then prominently addressed to our attention, we

reached the conclusion that the complainants were invested with the legal title to the premises and had an adequate remedy at law; and we accordingly dismissed the bill. Upon the application of respondents for a modification of our opinion, holding that the legal title was in the complainants, the case was again elaborately argued by counsel, upon briefs, and new considerations brought to our attention, which now convince us that our former opinion was erroneous, in the respect above stated, and that the application for a modification of it ought to be granted. We will proceed presently to give our reasons for this conclusion.

After that decision, real actions were instituted by the complainants, in the circuit court, and prosecuted to verdicts and judgments in their favor; and from those judgments appeals were prosecuted to this court, and are now before us. We have before us, also, the said application for a modification of the former opinion, in the equity cause.

The opinion we now hold is that the conveyances executed by Welsh, the trustee, though infected with palpable breaches of trust, apparent upon the faces of the conveyances themselves, were yet, in the view of a court of law, valid executions of the trust, passing the legal title in fee to the premises to the grantees, respectively, leaving a resort to a court of equity as the appropriate and only remedy of the beneficiaries of the trust for redress of the breaches of trust committed by Welsh and his vendees.

The first questions are: What title did Wesh, as trustee, have when he conveyed to Wright and Pierce? Was it a fee or less estate? If there is an axiom in the law, it must be regarded as axiomatic, in the construction of active trusts, that the trustee, (not a bare donee of a power), irrespective of the estate the instrument purports to convey, will take, thereunder, precisely that *quantum* of legal estate which is necessary to the discharge of the declared powers and duties of the trust, no more and no less; so that if the instrument imports a larger estate than is thus essential, it is cut down to the measure of the exigencies of the trust; as where the conveyance to the trustee is in fee, and the trusts re-

quire only a life estate in the trustee, only a life estate
is vested in him; and if the conveyance is, in terms of
a life estate, and a fee in the trustee is necessary, his
estate is expanded or enlarged into a fee; or to quote
Mr. Lewin: "First, wherever a trust is created, a legal
estate sufficient for the execution of the trust shall, if
possible, be implied;" and "secondly, the legal estate
limited to the trustee shall not be carried further than
the complete execution of the trust necessarily
requires." All commentators and adjudged cases,
including a number of our own decisions, concur
in these propositions; and as the principle is not
disputed, in this case, we will not take the time to cite
them. It is also a rule, upon which all are agreed, that
whatever be the limitations of the instrument, and
whatever estate the trustee takes, in the beginning, the
legal estate in the trustee is divested out of him, and
passed into the *cestui que trust,* upon the instant that
the duties and powers of the trust, from any cause,
cease to be active, or cease to require a legal title in the
trustee. Again, it will not be questioned, that a power
to sell the estate, in fee, conferred upon the trustee, by
the terms of the trust, invests him with the legal title
in fee; for the principle is not only self-evident, but it
is so expressly declared in all authorities upon the sub-
ject. And this is so, even where the trust to sell is on a
contingency.—1 Lewin on Trusts, 213, (3) ; *Huckabee
v. Billingsly,* 16 Ala. 414. As where the sale is to be
upon request of another person, and the trustee was
never actually called upon to exercise the power of sale.
27 Am. & Eng. Encyc. of Law, 115, note. In this volume
beginning at page 107, will be found a full discussion of
these subjects, collecting a great many authorities, with
copious extracts from adjudged cases; and, in a note of
over thirty pages, in 19 Am. St. Rep. 266, Mr. Freeman
sums up the law, collating scores of cases, upon well
nigh every question which can arise in reference to
estates of trustees, their powers and duties and the man-
ner and effect of their execution, supporting the prin-
ciples above laid down and others which will be relied
upon in this opinion.

It is also laid down, and nowhere disputed, that,

"Where an estate is given to trustees, in fee, upon trusts that do not exhaust the whole estate, and a power is superadded which can only be exercised by the trustees conveying in fee simple, the trustees will take the fee, and the estate conveyed by them will be sustained by the fee in them, and not by the mere power."—1 Perry on Trusts, §316. This describes the Falconer deed in question. The conveyance to Welsh was, in terms, in fee. The active duty, apart from the power to sell, was to preserve the equitable separate estate of Mrs. Robinson, during her life. If the deed had stopped there, Welsh would have taken no greater estate than for her life, for that would have limited the necessity for a trust; and such a trust not affecting the estate in remainder, the legal estate in remainder in fee, dependent upon the precedent life estate, would have, at once, vested in the designated remaindermen, by operation of the statute of uses. But, there was the superadded power to sell the fee, and this retained the entire estate in the trustee; and in him that title must have remained until he divested himself of it by grant; or, not having granted it, until the death of Mrs. Robinson, when her request for the exercise of the power would have become impossible; or until, by the death of the trustee, or the processes of a court of equity, in the exercise of its supervision of trustees, or by contract of all parties concerned, the estate should have been devolved upon another.

Then, the inquiry arises, what has become of this fee simple title, so vested in Welsh, the trustee? The case shows that during the life of Mrs. Robinson, upon her request, in writing, manifested by her signing and sealing the deed, in the one case, and actually joining in the deed, in the other, Welsh, the trustee, upon valuable considerations, by his deeds, respectively, granted, bargained, sold and conveyed to Wright and Pierce, respectively, his entire title and estate in the premises; in the one case, with the usual covenants of warranty, etc., and the other by quitclaim. In the deed to Wright he expressly declares, upon its face, that he conveys, as trustee; in that to Pierce, the law imputes the act to that capacity for the reason that he had no pretense of

connection with the land, or estate therein, except as trustee. The law to this effect is not disputable.—*Doe ex dem. Gosson v. Ladd,* 77 Ala. 223, (19 Am. St. Rep. note on p. 292). See full discussion of the question in *Gindrat v. Montgomery Gas Light Co.,* 82 Ala. 596.

Mr. Lewin (p. 221) says: "It may be stated as a general rule, that the legal estate in the hands of the trustee has, at common law, precisely the same properties and incidents as if the trustee were the usufructuary owner." He proceeds to give numerous illustrations of the rule, and reaching page 225, says: "A trust estate, whether real or personal, may, at law, be conveyed, assigned or encumbered by the trustee like a beneficial estate; and if there be co-trustees, each may exercise the like powers of ownership over his own proportion. Thus, if lands be vested in trustees as joint tenants, each may, at law, receive the rents, and each may, at law, sever the joint-tenancy by a conveyance of his share." He also shows that a devise by the trustee of the trust estate, will at law pass his title to the devisee. But, of course, all such dispositions are subject to the equitable rights of the *cestui que trust.* Thus, the same author says, at page 572: "In a court of *law,* the trustee, as the absolute proprietor, may of course exercise all such powers as the legal ownership confers; but, in equity, the *cestui que trust* is the absolute owner; and the question we have to consider in this place is, how far the trustee may deal with the estate without rendering himself responsible in the *forum* of a court of equity." He then proceeds to set forth, at length and in detail, the rights, powers, and liabilities of the trustee, in a court of equity.

Mr. Perry says: "As a general rule, the legal estate in the hands of a trustee has at common law precisely the same properties, characteristics, and incidents, as if the trustee were the absolute beneficial owner. The legal title vests in him together with all the appurtenances and all the covenants that run with the land. The trustee may sell and devise it, or mortgage it, or it may be taken on execution. It may be forfeited, and it will escheat on failure of heirs, and so it will descend to heirs on the death of the trustee. All these proper-

ties and incidents attach to the legal estate at common law, whether in the hands of a trustee or of an absolute owner; but these incidents do not generally interfere with the proper execution of the trust, for all conveyances and all incumbrances made or imposed upon the estate by the trustee, for other purposes than those of the trust, or in breach of the trust, are utterly disregarded by a court of equity, whatever may be the effect of such conveyances or incumbrances in a court of common law. And as the trustee may in a court of law, as a general rule, deal with the legal estate in his hands, as if he was the absolute owner, so the *cestui que trust* in a court of equity may deal with the equitable estate in him; he is the beneficial and substantial owner, and in the absence of any disability—that is, if he is *sui juris*—he may sell and dispose of it; and any legal conveyance of it will have in equity the same operation upon the equitable estate as a similar conveyance of the legal estate would have at law upon the legal estate."—1 Perry on Trusts, (3d ed.), §321; Hill on Trustees states the same doctrine, marg. pp. 175, 282, 283; Washburn on Real Property, the same, vol. 2, marg. p. 482 *et seq.* See also Tiffany & Bullard on Trusts & Trustees, 824 *et seq.*

In *Huckabee v. Billingsly,* 16 Ala. 414, Huntington executed to Howell a deed, in trust, to secure a debt due to Harrell, and secondarily to secure debts due to the Branch Bank at Mobile. Without the debts to the bank being paid, the trustee, in plain contravention of the trust, executed to the trustor, Huntington, a quit-claim deed in consideration of the payment of the Harrell debt. Afterwards, in strict pursuance of the power of sale contained in the trust deed, he, the trustee, sold the property to the plaintiff, and executed to him his deed thereto. The court held that the quitclaim of the trustee to the trustor divested the title of the former, and revested it in the latter, and that the action of trespass to try titles, founded on the subsequent deed of the trustee to the plaintiff, under the power, could not be maintained. Chief Justice COLLIER discussed the subject at length, saying, *inter alia,* that, "A trust estate, whether real or personal, may, like a beneficial estate,

be conveyed, assigned, or incumbered by the trustee, at law. As the dry legal estate in the hands of the trustee is affected by the operation of the law, and may be disposed of by the act of the trustee, precisely in the same manner, as if it were vested in him beneficially, so it confers upon him all the legal privileges, and subjects him to all the legal burdens that are incident to the usufructuary possession. Thus he may sue at law respecting the trust estate; the *cestui que trust,* though the absolute owner, in equity, is regarded, in a court of law, in the light of a stranger." See also, *Herbert v. Hanrick,* 16 Ala. 581.

In *McBrayer v. Cariker,* 64 Ala. 50, Chief Justice BRICKELL said: "The general rule, insisted on by appellant, may be conceded, that at law the trustee, clothed with the legal title, unless restrained by the terms of the trust, may convey, assign, or incumber the trust estate; and if the *cestui que trust* is injured he must resort to a court of equity for relief;" citing *Huckabee v. Billingsly, supra.* But, in that case, the conveyance of the trustee, relied upon, was made after the active duties of the trustee, under the terms of the deed, had terminated, if, indeed, the trust had ever been an active one—a question which the court said it was unnecessary to decide; and it was correctly held that the trustee had no title to convey, at the time he executed his deed. The authorities are uniform that after all power in the trustee to perform an active duty, under the peculiar terms of the trust, ceases, his title, which was commensurate only with the duty, also ceases, and thereafter he can convey none to another. *Comby v. McMichael,* 19 Ala. 747; *Doe ex dem. Gosson v. Ladd,* 77 Ala. 223.

In *Hairston v. Dobbs,* 80 Ala. 589, the executor of a will was given "full power to purchase or sell property he may think necessary or proper, * * * * * * or to dispose of any property for the benefit of the estate." He sold and conveyed lands of the estate to Dobbs. Held, that, though the conveyance may have been made in payment of an individual debt due by the executor to Dobbs, (a papable breach of trust), yet the conveyance passed the legal title to the latter, and the devisees

could not, for that reason, maintain ejectment against that deed. The court confined the devisees to their appropriate remedies for the breach of the trust. And hence these devisees were remaindermen.

Mr. Freeman, in his note *supra,* 19 Am. St. Rep. 267, citing many authorities, states the rule thus: "Where the rules of law upon the subject have not been modified by statute" (which he subsequently shows is the case in New York, Michigan, Wisconsin, Minnesota, Kansas, California and Dakota) "all conveyances by a trustee, whether to an innocent purchaser or not, and whether in contravention of the trust or not, operate upon the legal title and vest it in the grantee. This conclusion," he says, "necessarily followed from the refusal of the common law to recognize trusts or equitable titles, for unless such trusts or titles were to be considered, there was no reason why the trustee should not convey to whomsoever he pleased. His conveyance was, therefore, valid at law, and the rights of the beneficiary could be protected only by his seeking redress in equity, and compelling the grantee to respect and to execute the trust, as the original trustee should have done." As stated above, in New York and the other States mentioned, the rule is changed by statute, and it is declared that where the trust is expressed in the deed to the trustee, creating the estate, every transfer or other act of the trustee in contravention of the trust, is absolutely void. Discussing these statutes, Mr. Freeman observes: "The doubts most likely to arise concerning the signification of these statutes are, first, do they mean that inhibited conveyances shall be deemed void at law, as well as in equity? and, second, if void both at law and in equity, are they also void when, upon their face they appear to be made pursuant to the authority conferred on the trustee, and the fact of their being in contravention of the trust must be established by extrinsic evidence; and knowledge of this fact cannot be brought home to the grantee or his successors in interest?" He then proceeds to the New York decisions, construing the statute, holding the inhibited conveyances to be void, both at law and in equity, against purchasers with

or without notice; that the title, powers and duties of
the trustee are unaffected by the conveyance, and he
continues to be trustee to the same effect as if the con-
veyance had not been made. A case—the counterpart
of *Huckabee v. Billingsly, supra*—is cited, where it was
held, under the operation of the statute, that the recon-
veyance to the trustor by the trustee, was absolutely
void. See the cases collated in the note *supra*. We have
no such statute. The common law, upon the subject, ob-
tains with us in all its vigor, except as to the descent of
trust estates.

Notice the analogies which we meet with in almost
every day experience. A mortgagee is invested with
the legal title to land, in trust, for the sole purpose of
securing his debt. His power to sell for that purpose
is required to be exercised after strictly defined formal-
ities; yet his bare deed to the premises, or a transfer of
the mortgage with apt words to convey the land, passes
the legal title to the land, though there be entire disre-
gard of the prescribed formalities. And if the condition
of the mortgage be not performed by the mort-
gagor to the very day, payment of the mort-
gage debt thereafter, (until the rule was changed by a
recent statute in this State), did not operate to re-
transfer the title to the mortgagor; and his only remedy
was in equity. A vendor of land who receives full pay-
ment of the purchase money, and puts the purchaser in
possession without a conveyance, stands as a construc-
tive trustee of the vendee; and, clothed with the dry
legal title, may eject the vendee at law. The vendee's
only remedy is in equity. A trustee of an express trust,
purchasing at his own sale, commits an open and con-
clusively prejudicial breach of his trust, yet his pur-
chase discharges the express trust, and converts him
into a constructive trustee, of which character the *ces-
tuis que trust,* may avail themselves, by a proceeding in
equity, seasonably begun—within two years, under our
rulings, unless there be special circumstances justify-
ing greater delay. Countless instances might be given,
demonstrating the universal rule of the common law,
that trustees clothed with the legal title by virtue of the

trust, and having and claiming no other estate in the premises and professing to convey no other, pass that title by their grants, without any regard, in a court of law, to the nature, object or purposes of the trust, or conformity to their requirements. Indeed, it required a statute in this State, to prevent the descent of that title to the heirs of the trustee.—Code of 1886, §1848; Code of 1896, §1044. In the objects and requirements of the trust, are centered the equitable rights of the *cestuis que trust,* and in a court of equity alone can they enforce them, or redress their breach.

A moment's reflection discovers, as a logical necessity, that the very doctrine itself of the validity of trustees' conveyances, in a court of law, implies its application to conveyances in contravention of the trusts; for if a conveyance be in conformity to the trust, no question of its validity can possibly arise. It is absolutely valid and unassailable, both at law and in equity. And it seems needless to argue, that so far as the validity of the conveyance, in a court of law, is concerned, it is wholly indifferent how the breach is manifested; whether shown upon the face of the trustee's deed, or to be established by extrinsic averment and proof. The breach, whatever its nature, being immaterial, as affecting the *legal* conveyance, its existence or non-existence is not a matter of inquiry. Thus, it is impossible to find a case anywhere, where the trustee was *sui juris* and was confessedly clothed with the legal title, and his deed was not immoral and void, as offensive to public policy, that his conveyance was assailed, except because it was in contravention of the trust; and in every such case, at law, which our research discloses, (and we have spared no pains, in that behalf), with one exception to which we will refer, the parties complaining were remitted to their remedies in equity. See the Alabama cases above referred to; also the numerous authorities in point collected upon the briefs of counsel; to which we add *Taylor v. King,* (Va.) 8 Am. Dec. 746; *Cox v. Blanden,* (Pa.) 26 Am. Dec. 83; *Reece v. Allen,* (Ill.) 48 Am. Dec. 336; *Gale v. Mensing,* (Mo.) 64 Am. Dec. 197, and extended note; *Stephens v. Clay,* 31 Am. St. Rep. 328.

The exception referred to, is the doctrine of some Missouri and Mississippi cases, and perhaps of one or two other States, that when a trust deed to secure debts confers a power of sale to be exercised after giving a prescribed notice, the notice is a condition precedent to any conveyance of the legal title by the trustee.—*Ohnsburg v. Turner,* 87 Mo. 127; *Enochs v. Miller,* 60 Miss. 19. It is familiar to this court that such is not the law in this State, as settled by *Huckabee v. Billingsly, supra,* and many subsequent analogous cases. With us, such an irregular sale is voidable, and the equity of redemption, without regard to the statutory right of redemption, will continue until enforced or barred by *laches.* In *Robinson v. Cahalan,* 91 Ala. 479, there was a fatally defective execution of the power of sale in a mortgage on account of non-conformity to the prescribed formalities, as to notice, etc., but a deed was made to the purchaser by the mortgagee; and it was held, that this deed, although not a foreclosure of the mortgage, for the want of the prescribed notice, etc., passed the legal title of the mortgagee to the purchaser, and on that deed the purchaser recovered, in an action of ejectment.

The rule is universal that upon breach of trust by a trustee, howsoever manifested, the *cestui que trust* may affirm or disaffirm the breach at his election. For instance, no one would doubt, for a moment, the equity of a bill filed, in due season, by a *cestui que trust,* against the trustee, who, holding the legal title, sold and conveyed to a purchaser, both of whom engaged in misappropriating the purchase money, and against such purchaser, affirming the sale and conveyance, and electing to hold the trustee and purchaser responsible for the misappropriation and to have the money reclaimed and the same laid out, under the direction of the court, in other property upon the same trusts, securing its payment into court, or to another trustee appointed by the court, by a lien on the land conveyed to the purchaser. Suppose, a demurrer to such a bill, objecting that complainant had his remedy at law, in that the breach of the trust rendered the sale and conveyance to the purchaser void at law, and that his only

remedy was to take back the land, what would be the
ruling upon the demurrer?  To ask the question is to
answer it.  The law prescribes no fixed, unalterable
consequence of a breach of trust, committed in the dis-
position of a trust estate. The remedies, in equity, of the
*cestui que trust,* are various and subject to his election..
He may, we repeat, affirm the breach; submit to the
conveyance, and elect other redress against the trustee
and purchaser.  If an infant, the court may elect for
him.  The remaindermen, in this cause, may have
deemed the sales advantageous to them, by reason of
their power to have the purchase money brought into,
and secured by the court of equity, for their ultimate
enjoyment; charging the payment of the sum, not only
upon the trustee and purchasers, personally, but upon
the lands inequitably disposed of by the trustee.  To
determine that the breach of trust is, of itself, conclu-
sive of the invalidity of the sale, would be to determine
that the only recourse of the *cestui que trust* is to re-
claim the land.  If the sale and conveyance are to be
treated as nullities, then, although the lands may have
sold for a large price; or may have enormously dimin-
ished in value since the sale; or, being valuable princi-
pally for their improvements, the improvements may
have been destroyed after the sale, without fault of the
purchaser, yet the benefits of these casualties will be
conferred upon the culpable purchaser, by securing him
exemption from the restoration of the original agreed
purchase money to its legitimate channels, and com-
pelling the *cestui que trust* to take the land, only, in
its denuded or valueless condition.  Of course, the *ces-
tui que trust* may, by his bill, elect to annul the legal
conveyance and reclaim the land, instead of other
redress.

These elections cannot, of course, be made in a court
of law.

Again, were we to hold that the Wright and Pierce
deeds are void, because of the breaches of trust ap-
parent upon the deeds themselves, we would presuppose
that the recitals of payment of the purchase money
to Mrs. Robinson, in the one case, and her husband, in
the other, *conclusively* establish, as matter of law, be-

yond all issue, investigation, or inquiry, that there was
a substantial misappropriation of the purchase money,
amounting to a breach of trust. And not only this, but
that they *conclusively* establish, as matter of law, be-
yond all issue, investigation or inquiry, that the pur-
chase money took the direction indicated by the recitals,
without any act of omission or commission on the part
of the remaindermen, or either of them, estopping
them, in equity, to impeach the transactions. Although
the purchasers and trustee, or their representatives,
may stand ready and able to aver. and prove that the
purchase money was actually, honestly and judiciously
invested in other property upon the same trusts—in
slaves, it may be, who were lost by death or emancipa-
tion; or in stocks or bonds which went into the hands
of the trustee; or even in lands, with all the necessary
muniments of title; or, though they be ready and able
to aver and prove that the transactions took the shape
they did, by the express consent and request, in writing,
it may be, of all the remaindermen, yet the mere circum-
stance, that the deeds recite payment of the money to
Mr. and Mrs. Robinson, forever precludes them; for-
ever shuts them out from all opportunity to explain,
and show that the trust requirements were, in fact,
honestly and judiciously carried out, or that the wishes
and desires of the remaindermen, expressly made
known, were honestly observed. A practical test: Sup-
pose the remaindermen had, within a reasonable time
after the sales, filed their bill to redress the breaches
of trust indicated by the recitals, in question, electing
the nature of relief deemed most advantageous to them;
to which the trustee and purchasers answered or
pleaded, in bar, a due reinvestment, such as we have
above supposed, or an act of clear estoppel, as sup-
posed, would any court hold that such answer or plea,
established by proof, would not have defeated relief?
Most assuredly not. See the consequences of such a
rule: It will not be contended, that a deed by a trustee,
whose recitals show a breach of trust, possesses any
other or greater invalidity than one whose recitals
show due conformity to the trust, but which, upon ex-
trinsic proof, is shown to have been executed in breach

of the trust, participated in by both the trustee and purchaser. The only difference is one of evidence. In the one case, the recitals are *prima facie* evidence of the breach, casting the burden of proof upon the purchaser; in the other they are *prima facie* evidence of conformity to the trust, casting the burden of proof upon the *cestui que trust.* The breach being established, in either case, its effect upon the deed is precisely the same. What that effect is, as we have already seen, equity opens a wide door to the injured *cestui que trust* to determine, by his election. He cannot be forced to treat the conveyance as void, and take the land, or have it secured for him when his right, in possession, accrues; for to do so would deprive him of his right to elect other redress which might secure to him much larger benefits. If the deed is a nullity, the purchaser thereby having no legal or equitable rights under it, this right of election of the *cestui que trust* would, as we have said, be excluded; for a party cannot ratify or affirm a conveyance absolutely void, conferring no right, legal or equitable, and elect to take other rights, as growing out of it, more burdensome, it may be, to the opposite party. It would require a new contract, in such a case, to confer any right other than the right to reclaim what the opposite party may have acquired possession of under the void deed, together with such damages as might be legally incident to such wrongful possession. To state another practical case: The deed recites due conformity to the trust. A bill is filed alleging that the recitals are false; that the purchase money was, in fact, paid by the purchaser to the life tenant and her husband, instead of to the trustee who alone was authorized to receive it; and praying for such lawful redress as the complainant, as *cestui que trust,* might elect and claim. Thus, upon the principle that a deed is void because of the breach of trust, we would have a bill which showed, by its allegations, that the deed was absolutely void from its inception; and unless the bill was so framed as to justify a decree cancelling the deed as a cloud upon the complainant's title, it would go out of court for want of equity. Again, the rights of the parties in reference to the verity of the recitals must be correlative.

The trustee is the embodiment, so to speak, of the *cestui
que trust.* Through him, they are parties to the deed.
They are separate from him, and can assail his acts,
only in equity. If recitals showing a breach are *conclu-
sive,* as a corallary, they are conclusive when they show
conformity, thus excluding, in the latter case, all
redress.

A purchaser from a trustee, in contravention of the
trust, in no sense, becomes thereby an *express* trustee.
He becomes a trustee *in invitum,* by construction of
law. He is a constructive trustee. He holds actually
in his own right, and in hostility to the world; but a
court of equity, as Judge Story puts it, will "force a
trust upon his conscience," and compel him to perform
it or answer for its fruits.—2 Story Eq. Jur., §1257;
2 Washburn Real Prop., marg. p. 177, §21; Hill on
Trustees, marg. p. 144; 1 Perry on Trusts, §§217, 241;
2 Pom. Eq. §1048; *Smyth v. Oliver,* 31 Ala. 39. A re-
sulting trust, though by no means an express one, be-
cause not declared in the deed out of which it arises,
approaches more nearly thereto, in that it rests upon a
presumed intention; from which results the rule, that
the purchase money must have been paid at the time of
the purchase; whereas, a constructive trust, like the
present, is supported by no such presumption. It is en-
tirely *in invitum,* and is raised and enforced by a court
of equity, as a principle of justice. It has attached to
it none of the attributes of an express trust. The pur-
chaser is charged for breaking up the trust, and not be-
cause he has agreed to execute it.

In view of these considerations we are compelled to
hold that the legal title passed by the Welsh deeds to
Wright and Pierce, and that the remedy of the com-
plainants was alone in equity, upon bill filed in due
season.

It follows from what has been said that the counsel
for the complainants, had they been in season, properly
conceived their remedy when they filed the bill in
equity.

But, that bill was properly dismissed by the chan-
cellor, and the dismissal affirmed by this court, be-
cause of the great staleness of the demand sought to be

made the basis of relief. The court was open to the complainants from 1854, in one case, and 1858 in the other, to obtain the relief they have been entitled to, or ever could have become entitled to—the identical relief (assuming the same election) sought by the bill in this case. The fact that by the terms of the Falconer trust the complainants could have had no *possessory* right until the death of Mrs. Robinson, who was the life-tenant, cannot possibly affect the question. It is unquestionably true (for it is the settled rule everywhere, saving what shall be said of *Iron Co. v. Fullenwider* and cases following it), that one having a legal title entitling him to a possessory action upon the falling in of a precedent particular estate, is not affected by any lapse of time, howsoever great, until the particular estate falls in, by which event he, for the first time, becomes entitled to his action. There can, it would seem, upon principle, and certainly so by the great weight of authority, be no disseizin of a remainderman, having the legal title, in remainder in himself, until his right of possession accrues, for until then he is without remedy of any sort, against any trespasser or adverse holder, except the right in equity to stay waste and the like. But here, these complainants were divested of all title by Welsh's execution of the trust. Their estate was gone. Neither the death of Mrs. Robinson nor any other event would or could have vested in them any estate whatever growing out of the muniments of title. If there was, in the execution of the trust, such a breach committed by Welsh and his vendee as is alleged, its effect was, as we have shown, to create in the complainants an independent, substantive cause of relief for being made whole against the consequences of the breach, to be worked out through the court of chancery according to such recognized equitable right and remedy of redress, in such cases, as the complainants might, by their bill, elect. Upon establishing the breach they could have affirmed the sales, and held the guilty parties to a proper accounting therefor, and disposition of, the purchase money, or they could have disaffirmed the sale, and by decree obtained vacation of the conveyances and restoration of the estates in the land to the

[Robinson *et al.* v. Pierce *et al.;* and Stone v. Robinson *et al.;* and
Pierce *et al.* v. Robinson *et al.*]

status and condition in which the Falconer trust deed
would have left them.   It is, then, necessarily true (as-
suming election of the last named relief) that the only
right, in respect of the land, which the complainants,
at the time of Welsh's execution of the trust, or ever
afterwards, either before or after the death of Mrs. Rob-
inson, could have asserted, was this right to sue in
equity to obtain an estate, by restoration, by decree, of
the original status.   This done, and if the trust still re-
mained unexecuted at the death of Mrs. Robinson, her
death would have rendered its execution impossible;
there would have been no longer necessity for retention
of the legal title by the trustee, and the legal estate in
fee would have vested in the complainants upon which
they could then have maintained their possessory
action, either by petition to the chancery court, in the
cause where their title was established, to be let into
possession, or by real actions at law as they might have
chosen, and no lapse of time (unless the trustee had
suffered himself to be disseized for a period sufficient to
bar him, thereby barring all *cestuis que trust)* occur-
ring during the life of Mrs. Robinson, could have af-
fected their right of recovery.   These possessory rights,
it is manifest, did not and could not come into existence
until, as independent, substantive equities, they should
be sued for and obtained in a court of equity, and that
remedy was open, immediately upon the commission of
the breach of trust, to precisely the same extent and ef-
fect as after the death of Mrs. Robinson.   A perfect bill
filed before her death would have been in the identical
words of one filed after that event.   It would not have
been even necessary to ask, in the bill, for a writ of pos-
session, for that could be done by petition to the chan-
cellor after passing the decree establishing the com-
plainants' estate and right of possession, suggesting
and showing the death of the life tenant.   The suit in
equity is for the purpose of *acquiring an estate* which
will give a possessory right enforceable by action of
law, at the time which, by the effect of the grants as
they are decreed to exist, such right would arise.   The
power of the chancellor, upon establishing this estate,
on petition, to put the complainants in possession is

purely auxiliary, incidental—not the primary purpose of, nor forming a part of the equity of, the bill. The question of when, or on what contingency, the complainants may become entitled to possession cannot possibly concern the relief sought by the bill.·

Let us illustrate by a perfectly plain case: One, having (we will say) ·a vested legal estate in remainder in lands dependent upon a precedent life estate, is by fraud and deceit, induced to sell and convey his estate to another, pending the life estate. Here, we observe, his estate is, by his deed, entirely gone—destroyed. But, there grows out of its destruction, by reason of the fraud, a right in him, at his election, to confirm the fraud and sue for damages, in the equitable action of deceit, or, repudiating the transaction, to file a bill in chancery for rescission and restoration to his estate. It is manifest that the remedy chosen is open to him at once, without regard to the life or death of the life tenant. If he elects the remedy in chancery his object is to get back his title, it matters not when his right of possession may accrue, for until he is restored to his title by a court of equity he can never have a right or action of possession at law. His restoration to his estate, established by decree years before ·his possessory period, is just as available to him, for all purposes, as if so established after that period. The question of the time or event of the possessory right is utterly immaterial. No one would contend that a party thus alleged to be defrauded could lie by for thirty or forty years, either before or after the life estate falls in, and then file a-bill to rescind his conveyance on account of such alleged fraud.

The briefs on file contain an ample collation of the authorities on the subject we are discussing. Though the last Alabama case on the subject (Lowery v. Davis, 8 So. Rep. 79) seems to commit this court irrevocably to the much criticised and doubtful, if not plainly erroneous, doctrine of *Woodstock Iron Co. v. Fullenwider,* 87 Ala. 584, yet the integrity of that decision is, by no means, essential to the correctness of the conclusion declared in this case. There, (as in ·the two subsequent cases which followed that decision—*Lansden*

*v. Bone,* 90 Ala. 446 and *Lowery v. Davis, supra),* the at-
tempted sale of the reversionary estate was absolutely
void—the *legal* title, according to the muniments, con-
tinued unbroken in the reversioners down to, and after
the death of, the life tenant, and yet, because (as it was
held) the void deed, professing to convey the reversion,
cast a cloud upon the reversioners' title which they
could have gone into equity to remove, and because (as
was held) the purchase money paid by the purchaser
at the void sale of the reversion having gone into the
hands of the personal representative of the deceased
owner of the lands through the medium of the void sale,
and by him applied to the payment of the debts of such
deceased owner, an equitable estoppel was created upon
the reversioners, in whom the legal title resided, to
claim the land against the void purchaser without pay-
ing back the purchase money (whether with or without
interest being pretermitted by the decision), it became
the duty of the reversioners, within twenty years (al-
though they held the legal title, with no power what-
ever to enforce it until their right of possession accrued
by the falling in of the life estate) to file their bill for a
redemption, so to speak, from the void sale, tendering
to the purchaser the purchase money, and to have the
cloud removed from their title; and having failed so to
sue within twenty years, notwithstanding the continu-
ance of the life estate, they were barred to assert their
title after the life estate fell in. Here, in the case be-
fore us, after the trustee executed the trust, the remain-
dermen had no title and no possibility of becoming in-
vested with one, except by suing in equity to acquire
it, based upon the independent cause of relief conferred
by the breach of trust. It is to this equitable proceed-
ing to acquire a title that staleness of demand is
pleaded, and to disallow the defense would be to over-
rule that great and invaluable principle of equity which
has stood for centuries requiring the suitor to be dili-
gent. What conceivable reason can there be for ex-
empting a person from this rule of diligence who sues
in equity to acquire an estate in remainder or reversion,
any more than one suing in equity to acquire an estate
in possession? His decree, when obtained, establishes

perpetually his title, entitling him to maintain his action for possession whenever the event entitling him to possession transpires; and no lapse of time after recovery of the decree, and before the possessory right accrues, could affect his right to recover possession upon the happening of the latter event. The harshness and injustice of a contrary rule would work untold detriment. Here, the complainants, professing no right but that of an equity capable, at any time within twenty years, of enforcement, call upon the respondents to answer and make proof, if they would defend themselves, against that equity, alleged to have grown out of transactions *in pais,* occurring nearly forty years before.

That the complainants' right to file their bill, at any time after the commission of the alleged breach of trust, was perfect, cannot be questioned. A case strongly illustrative (saying nothing of our own decisions cited upon briefs) is that of *Wright v. Miller,* 8 N. Y. 9, (59 Am. Dec. 438). There a trust deed vested an equitable estate in lands in remaindermen. The trustor and trustee conveyed, in contravention of the trust, under a decree of court fraudulently obtained. The remaindermen filed their bill, pending the life estate, to have the fund properly restored and reinvested for their ultimate use, when their right in possession would have accrued, and the relief was granted.

We think there can be no doubt that the dismissal of the bill was supported by the staleness of the demand.

The application for modification of our former opinion in the equity case is granted so as to conform to the views herein expressed. In each of the law cases the judgment will be reversed and the cause remanded.

BRICKELL, C. J., not sitting.

COLEMAN, J., *dissenting.*—I am aware that any further discussion of the principles involved in this case, would not change the result, and I do not propose to do more than merely to state my position, and the propositions which sustain it. John Falconer, in 1847, conveyed the lands in fee to Thomas Welsh in trust, for the sole use and benefit of his daughter, Mary Jane Robinson, during her natural life, and at her death to com-

plainants.  By the deed of trust, the trustee was given
the power to sell and convey said lands on request of
Mary Jane Robinson in writing, and invest the proceeds
of the sale thereof in property "to be held subject in
like manner to the same uses and trusts hereinbefore
stated."  Mary Jane Robinson, the life tenant, died in
1889.  Within less than a year after her death, the com-
plainants, both by suit in ejectment and by bill in chan-
cery, instituted proceedings to assert their rights under
the deed made by John Falconer.  It is not pretended,
that any conduct or word of theirs has induced action
on the part of the defendants, or that they have been
guilty of anything which authorizes the application
of the doctrine of estoppel.  It is not pretended that the
defendants are entitled to protection as innocent pur-
chasers.  Notwithstanding the provisions of the deed
of trust for their benefit, and that no principle of estop-
pel arises, and that defendants are not innocent pur-
chasers and that plaintiffs instituted proceedings with-
in a year after the termination of the life estate to en-
force their rights, the decision of this court is, that they
are without remedy, either in a court of law or equity.
However plausible and specious the reasoning, the con-
clusion reached demonstrates its unsoundness and in-
justice.  My own opinion is, that the deed of the trus-
tee to defendants, showing upon its face, that it was not
made in accordance with the power vested in the trus-
tee, but in direct violation of that power, did not divest
the estate of the remaindermen, and that upon the fall-
ing in of the life estate, under the facts, upon the plain-
est principles of justice, they were entitled to assert
and recover the estate given to them by the conveyance
of their grandfather.  The authorities are numerous
also which sustain this view, and which can be found in
the briefs of counsel representing the plaintiffs.