# CHARLESTON.

COUNTY COURT OF RALEIGH COUNTY v. COTTLE *et al.*

Submitted January 9, 1918.    Decided January 15, 1918.

1. EQUITY—*Parties—Interest.*

    A party having no substantial interest in a controversy cannot in a court of equity maintain a suit in his name for the benefit of the party beneficially interested.    (p. 473).

2. SHERIFFS AND CONSTABLES—*Action on Bond—Parties.*

    Where the sheriff of a county fails to account for funds coming into his hands belonging to the county court, and resort is had to a court of equity to recover such funds from him and the sureties in his official bond, which bond is payable to the State, suit for the purpose must be brought in the name of the county court as plaintiff, and not in the name of the State for the use of the county court.    (p. 473).

3. TRUSTS—*Following Property—Equity.*

    A party whose property has been appropriated by another may in equity follow and secure such property, either in its original or in any changed or different form, and this right to so follow and secure it extends to the property, either in its original or any altered form, in the hands of a third party, where it appears that such third party took it with notice of the fact that it had been improperly appropriated.    (p. 473).

4. SHERIFFS AND CONSTABLES—*Action Against—Sureties on Bond—Equity Jurisdiction—Accounting.*

    Equity has jurisdiction upon the ground of discovery and accounting to maintain a suit brought by a county court against a sheriff and several sets of sureties on several official bonds given by him during his term of office as sheriff, where it appears that such sheriff did not keep the accounts required of him by law to be kept showing his daily receipts and daily disbursements

81 W. Va.

from the county funds, and where for this reason, as well as from the character, number and intricacy of the transactions, it is difficult to determine the extent of the liability of each set of sureties in such official bonds. (p. 475).

Case certified from Circuit Court, Raleigh County.

Bill by the County Court of Raleigh County against C. V. Cottle and others. Demurrer to bill sustained, and case certified.

*Reversed and remanded.*

*M. L. Painter* and *J. W. Maxwell,* for plaintiff.

*W. H. Rardin, J. E. Summerfield* and *J. M. Anderson,* for defendants.

RITZ, JUDGE:

The defendant C. V. Cottle was sheriff of the county of Raleigh for the term beginning on the first day of January, 1909, and ending on the 31st day of December, 1912. On the 21st day of December, 1908, before entering upon the duties of his office, he executed an official bond as such sheriff, with the defendants H. A. Snuffer, J. S. Sweeney, Geo. W. Bair, Sr., John W. Ball, John R. Smith, G. C. Hedrick, E. L. Ellison, S. W. Trail, Henry Massie, F. C. George, John Williams and W. G. Callaway as his sureties. The taxes and levies for the year 1909 went into Cottle's hands for collection, and in August, 1910, he made a settlement of his accounts, from which it appears that he was indebted to the plaintiff in the sum of $3506.47. On the 9th day of November, 1910, the defendant John R. Smith moved to be discharged from his suretyship on the official bond of said Cottle, and the court entered an order requiring Cottle to give a new bond. This new bond was given on the 11th day of January, 1911, with the defendants W. H. Rardin, H. A. Snuffer, F. C. George, John W. Ball, H. H. Harwood, W. G. Callaway, Geo. W. Bair, Sr., John T. Bair, John Williams, P. P. Trail, J. E. Summerfield, J. L. Sweeney, G. C. Hedrick and J. H. Maynor as sureties. It is alleged in the bill that after the close of the second year's business, to-wit, in the

month of September, 1911, Cottle made another settlement of
his accounts, from which it appears that he was indebted to
the plaintiff in the sum of $4844.46. Thereafter the de-
fendant John Williams, one of the sureties, appeared before
the county court, and moved to be discharged as a surety
on the second official bond given by said Cottle, and the
court required Cottle to give a new bond as such sheriff,
which new bond was given on the 25th day of November,
1911, with the defendants J. M. Anderson, G. C. Hedrick,
H. H. Harwood, J. E. Summerfield, E. L. Ellison, W. H.
Rardin and P. P. Trail as sureties. Afterward, on the 30th
day of August, 1912, said Cottle made another settlement of
his accounts showing that he was indebted to the plaintiff
in the sum of $9608.78; and in September, 1913, he again
settled his accounts, from which settlement it appeared that
he was indebted to the plaintiff in the sum of $25,383.91; and
in September, 1914, another settlement was made by said
Cottle, from which it appeared that he was indebted to the
plaintiff in the sum of $24,047.22, which sum he was required
to pay over to his successor in office, but which he has abso-
lutely failed and refused to pay, and which sum it is alleged
he has embezzled and converted to his own use. It is also
averred in the bill that on the 9th day of November, 1910,
the defendants J. E. Summerfield, H. H. Harwood, W. H.
Rardin, J. T. Bair and J. H. Maynor, as sureties for the said
Cottle, executed a bond with conditions required by law, and
filed the same in the office of the clerk of the county court,
and caused the same to be entered in the proper official bond
book, but which it is averred does not appear from the county
court's minutes to have been approved by it, but which it is
contended is a valid and binding obligation.

It is averred in the bill that Cottle, while he was sheriff,
failed to keep accounts in his office as required by law show-
ing the amounts collected by him each day, and the amounts
disbursed by him each day from the public funds, or, if he
did keep these accounts, that he did not turn the same over
to his successor, and conceals the same from the plaintiff, so
that the plaintiff on this account is unable to tell, except
from the general settlements above referred to, when the

said Cottle disposed of the funds coming into his hands by virtue of his office. It is averred that the embezzlements of the said Cottle extend over the whole, or practically the whole of his term of office, and that it would be difficult, if not prac-, tically impossible, in a court of law, without the aid of discovery, to tell which set of sureties of the said Cottle is liable for the several defalcations; that a large part of the money so embezzled by the said Cottle while he was sheriff was invested by him in real estate, and that the said Cottle executed a deed of trust conveying said real estate to a trustee to indemnify and save harmless certain of the defendants as sureties on his official bond as such sheriff; that at the time this deed of trust was made the beneficiaries therein knew that Cottle had purchased this real estate with the public funds; that some of said real estate had been sold by said trustee, but plaintiff is not advised what disposition was made of the proceeds arising therefrom; that the trustee making said sale made no report of his sale, or the disposition made by him of the funds as required by law. The plaintiff seeks to have discovery from the said Cottle as to what disposition he made of the public funds coming into his hands not accounted for in his settlements aforesaid; it seeks to have him discover when he disposed of these funds so that the liability of the sureties on his several bonds may be determined, without which information it is impossible to determine which set of sureties is liable for his defaults. It seeks to have discovery also from the trustee and from the beneficiaries in the deed of trust as to the disposition made of the funds arising from the sales of the real estate sold under said deed of trust, and to have the same brought into court and applied to the discharge of the defendant Cottle's indebtedness; and also to have the unsold real estate subjected to sale in satisfaction of Cottle's indebtedness to the plaintiff, upon the theory that it is really the property of the plaintiff, having been purchased with funds embezzled from it; and it seeks also to have decree against the said Cottle for the amount of his default, and against the several sets of sureties on his several bonds for the amount of the default of said Cottle during the time each of said bonds were in force.

The sufficiency of the bill is challenged by demurrer upon three grounds: first, that the suit is improperly brought in the name of the county court, inasmuch as the official bonds of said Cottle are payable to the State of West Virginia; second, that the matters set up in said bill are not proper subjects of equity jurisdiction; and third, even if they are, the bill is mulitfarious. The court below sustained the demurrer, and the case is here to review that decree.

There is no merit in the first ground of demurrer that the suit is improperly brought in the name of the county court instead of in the name of the State for the use of the county court. In equity the parties beneficially interested in a cause of action sought to be enforced are the proper parties to be made plaintiffs. This exact question was decided by this court in the case of the State for the use of the *County Court* v. *Flanagan,* 77 W. Va. 505. In that case the suit was brought in the name of the State for the use of the county court against the sheriff and the sureties on his official bond, and the court held that a demurrer to the bill was properly sustained for the very reason that the suit must be brought in the name of the party beneficially interested, and not in the name of the State for the use of such party. See also *Kellam* v. *Sayer,* 30 W. Va. 109; *Bank* v. *Cook,* 55 W. Va. 220; *McClaskey* v. *O'Brien,* 16 W. Va. 791.

The plaintiff seeks here to sustain the jurisdiction in equity upon the ground that it is entitled to have discovery; upon the ground that there is involved the settlement of intricate and complicated accounts which can only be satisfactorily adjusted in a court of equity; and upon the further ground that it is entitled to follow and recover its funds invested by Cottle in the real estate referred to in the bill.

That a court of equity has jurisdiction at the suit of the owner of property to follow and recover such property, or the proceeds of it so long as it may be identified, and the interests of innocent parties do not intervene, cannot be doubted. Where the money or property of a plaintiff is embezzled by another and it is converted into a different form, as by investing the same in other property, the original owner has the right to claim the property if he can find it, even

in the hands of a third party, if that third party took it with knowledge of the fact that it was the fruit of embezzlement. The theory upon which equity proceeds in this class of cases is that the holder of the property will be treated as the agent of the real owner; that while at law the title to the property may be in a third party, or may be in the one charged with being guilty of the default or embezzlement, still in equity the party whose funds purchased the property will be treated as the real owner thereof, and the actual holder of the legal title will be treated as holding the same in trust for such real owner. Story's Equity Jurisprudence, §§ 1255-6; Pomeroy's Equity Jurisprudence, § 1053; *Bank* v. *Barry,* 125 Mass. 20; *Humphreys* v. *Butler,* 51 Ark. 351; *Newton* v. *Porter,* 69 N. Y. 133; *Robinson* v. *Pierce,* 118 Ala. 273. As was said by Lord Ellenborough in *Taylor* v. *Plumer,* 3 M. & Sel. 362, in speaking of the right of the owner of property to follow the proceeds thereof in equity: "It makes no difference, in reason or law, into what other form different from the original the change may have been made, whether it be into that of promissory notes for the security of money produced on the sale of the goods of the principal as in *Scott* v. *Surman* (Willes 400), or into other merchandise, as in *Whitecomb* v. *Jacob* (Salk. 160), for the product or substitute for the original thing, still follows the nature of the thing itself so long as it can be ascertained to be such, and the right only ceases when the means of ascertainment fails." But this jurisdiction of courts of equity is quite well established by our own decisions in the cases of *Ballard* v. *Ballard,* 25 W. Va. 470; *Barrett* v. *McAllister,* 33 W. Va. 738; *Marshall* v. *Hall,* 42 W. Va. 641; *Hogg* v. *McGuffin,* 67 W. Va. 456. We think it is quite clear that the plaintiff in this case can invoke the aid of a court of equity to follow its property in its changed form, and impress it with a trust in its favor. The fact that the property has been conveyed to a trustee to indemnify certain of the defendants against loss as sureties on Cottle's bond can make no difference, for the reason that to the extent that the plaintiff receives satisfaction out of this property they will be relieved as his sureties, and for the further reason that it is alleged in the bill that they took this deed

of trust with knowledge that Cottle purchased the property with money embezzled by him from the plaintiff.

Can this bill be sustained upon the theory of discovery and and accounting? The defendants contend that the allegations of discovery are simply colorable, and that there is no such state of facts alleged as will justify a court of equity in taking jurisdiction to settle the accounts. That equity will take jurisdiction for the settlement of complicated and intricate accounts there can be no question. *Grafton* v. *Reed,* 26 W. Va. 437; *Lafever* v. *Billmyer,* 5 W. Va. 33; *Petty* v. *Fogle,* 16 W. Va. 497; *White* v. *Cook,* 51 W. Va. 201. Originally it would seem that the jurisdiction to settle accounts in equity was based almost exclusively upon the necessity for discovery, but in modern times the courts have exercised the jurisdiction where the necessity for discovery did not exist, and it is now well recognized that this jurisdiction exists in courts of equity irrespective of the necessity for discovery, where the accounts are intricate and complicated, for the reason that the machinery of such courts is better adapted for the purpose of an accounting in such cases than is the machinery possessed by a court of law; and where it appears from the allegations of the pleading that the accounts are complicated, either because of the intricate character of the transaction between the two principal parties, or because of the complication which arises on account of fixing the liability of several classes as sureties, as is the case here, a court of equity will unhesitatingly take jurisdiction and employ the agencies at its command, to the end that the rights of the parties may be determined and settled. 1 Story's Equity Jurisprudence, § 451. It is true in the case of *White* v. *Cook,* 51 W. Va. 201, jurisdiction was denied, the court holding that no complicated or intricate accounts were involved. All that was involved there were the dealings between a deputy sheriff and his principal. There was no necessity for discovery; there was no necessity for the intervention of a court of equity to determine what funds went into Cook's hands, nor was there any necessity for its intervention to determine what sums had been paid by Cook to his principal. So in the case of *Grafton* v. *Reed,* 26 W. Va. 437, this court, while recognizing

the jurisdiction to exist, denied that the facts set up in that case warranted the exercise of that jurisdiction. There were no complicated or intricate accounts, nor was there any discovery sought. In this case if there were only one set of sureties liable for the embezzlements and defalcations of Cottle, it might be said that there would be no complication in the accounts justifying the interposition of a court of equity, but such is not the case. Here we find several different bonds given by Cottle, each covering a different period of his administration of the office. The liability of the sureties on those bonds are for Cottle's embezzlements during the time those bonds were in force. Of course it is to the interest of each set of sureties to shove the liability onto another set. If separate suits were brought against Cottle and the separate sureties in his several bonds, all of the defendants in any one of the suits would be interested in relieving themselves of liability by passing the liability on to their successors or predecessors as such sureties. If all of these parties are before the court in one suit each set of sureties will be present to see that every thing is presented to fix the liability where it really belongs. The court in ascertaining this liability, and it appears that it will be a task of some difficulty, will have the aid of each set of sureties. We are of the opinion that the jurisdiction in equity to settle intricate and complicated accounts is properly invoked in this case. We think the interlocking of these sureties, and the difficulties in dcermining and placing upon each set the liability properly belonging to them, make the matters of account so intricate and so difficult that they cannot be settled in a court of law with any reasonable expectation of securing a correct result. In the case of *Compton* v. *Gilder,* 176 Ala. 309, the jurisdiction of equity to entertain a suit against a public officer, and the sureties in his official bond, where the accounts were complicated as they are here, was entertained. So in the case of *County of Dallas* v. *Timberlake,* 54 Ala. 403, the facts involved were very similar to the facts involved here. The tax collector who was the main defendant in that case had several sets of sureties on his official bonds. At the end of his term he was in default. It was difficult to deter-

mine which set of sureties was liable for the default, or rather what part of the default each set of sureties was liable for. The court sustained the jurisdiction in equity upon the ground of the intricate character of the accounting because of the interlocking of the sureties during the main defendant's term of office. Another case similar in its facts is that of the *Governor et als* v. *McEwen,* 24 Tenn. 241, where the jurisdiction in equity was sustained upon a bill filed against the commissioner of the school fund and two sets of sureties on different bonds covering his term of office, because of the difficulty in determining the liability of the respective sureties. So also in the case of *State* v. *Churchill,* 3 S. W. (Ark.) 352, the jurisdiction was sustained under facts very similar to those involved in the case at bar.

We are of the opinion that because of the difficulty in determining which one of the bonds given by the defendant Cottle was in force at the time any particular embezzlement took place, and the difficulty of determining just when those embezzlements happened, so that the liability of the several sets of sureties may be fixed among themselves, as well as for the other reasons adverted to, the accounts involved here are so intricate and complicated as to make this peculiarly a case calling for the exercise of equity jurisdiction.

It is contended, however, that the bill in this case is multifarious because it joins four separate causes of action, and seeks to ascertain the liability of the sureties in four separate and distinct obligations. We do not think the bill is multifarious for this reason. There is one common purpose running through the whole suit, and that is to obtain payment from the parties liable therefor on account of Cottle's default. The single object of the bill is to secure the payment of this money, and this cannot be done until the liability of each set of sureties is fixed, and, as before stated, the jurisdiction in equity to ascertain and fix this liability, because of the intricacy and complications which arise, is established. When we determine that this jurisdiction exists, it necessarily follows that all parties who might in any way be liable for this default, or any part of it, must be brought before the court, so that when a decree is entered it will fully dispose

of all matters involved, and fix the liability of every person in any wise connected with this transaction.

From what we have said it follows that the decree of the circuit court of Raleigh county sustaining the demurrer to the bill will be reversed, the demurrer will be overruled, and the cause remanded for further proper proceedings.

*Reversed and remanded.*