# CHARLESTON.

E. H. WILLIAMS, TRUSTEE, v. J. H. McCARTY *et als.*

Submitted February 26, 1918.   Decided March 26, 1918.

1. TRUSTS—*Following Property or Proceeds—Change in Property.*

   A party whose property has been appropriated by another may in equity follow and secure such property, either in its original or in any changed or different form, and this right to so follow and secure it extends to the property either in its original or any altered form in the hands of a third party, where it appears that such third party took it with notice of the fact that it had been improperly appropriated .(p. 160).

2. SAME—*Following Property—Equity Jurisdiction.*

   The jurisdiction of equity to follow property, or the proceeds thereof, when the same has been converted into some other form, at the suit of the owner thereof, will not be denied because the title of the plaintiff in such suit is contested by another, when the determination of the rights of the parties to the property simply depends upon the construction of their title papers, and not upon the determination of any question of fact.   (p. 160).

3. LOGS AND LOGGING—*Conveyance of Timber—Removal—Subsequent Agreement.*

   Where the owner of land conveys the timber thereon to a trustee to secure a debt which he owes to another, and there is no limit as to the time within which such timber shall be removed, it is competent for the owner of such land and the party secured by such deed of trust to fix such time by subsequent agreement, and when they have by such subsequent agreement fixed the time within which such timber is to be removed, and a sale is made under such deed of trust with reference to the time agreed upon by the parties for the removal of said timber, and the deed to the purchaser under such deed of trust provides for the removal of said timber within such time, such provision is valid and binding, and the purchaser's right to remove said timber will cease and determine at the expiration of such time. (p. 164).

Appeal from Circuit Court, Pocohontas County.

Suit by E. H. Williams, Trustee, against J. H. McCarty and others. Decree for defendants on sustaining demurrer to bill, and plaintiff appeals.

*Affirmed.*

*Price & McNeel,* for appellant.

*L. M. McClintic,* for appellee.

RITZ, JUDGE:

S. E. McCarty being the owner of a tract of land in Pocohontas county, on the 31st day of October, 1906, conveyed the timber upon the same to T. A. Bruffey, trustee, to secure to J. E. Peck & Company the payment of certain debts mentioned in said deed of trust. Subsequently, on the 27th day of May, 1907, said McCarty conveyed the land, except the timber thereon, to the defendant J. H. McCarty. The deed of trust conveying the timber contained no limitations as to the time in which said timber should be removed from the land. The debt secured by said deed of trust remaining unpaid, J. E. Peck the cestui que trust therein, the trustee, and J. H. McCarty, the owner of the land, on the 24th day of April, 1909, entered into an agreement by which it was provided, among other things, that in case of a sale under said deed of trust, the purchaser at such sale should have three years from the date thereof within which to remove the timber. On the 1st day of June, 1909, the trustee made sale of the timber under said deed of trust, and on that day conveyed the same to the purchaser, the predecessor in title of the plaintiff, reciting in said deed the agreement made between McCarty, Peck and the trustee to the effect that the purchaser should be allowed three years within which to remove said timber. The timber was not removed within three years from the date of said purchase, and in the year 1916 the defendant J. H. McCarty sold the said timber to the defendant Spice Run Lumber Company for the sum of one thousand dollars. The defendant lumber company, however, ascertaining that the plaintiff was making a claim to said timber, did not pay the purchase money to McCarty, but deposited the same in the

First National Bank of Marlinton, to be retained by that bank until it was determined who was entitled thereto. Plaintiff thereupon brought this suit for the purpose of recovering the purchase price of the timber on deposit in the bank.

The jurisdiction of a court of equity to entertain the bill is challenged. The bill is filed upon the theory that the plaintiff, as successor to the purchaser at the sale made by the trustee, was the owner of the timber; that this fact appears from a proper construction of the title papers filed with the bill; that the defendant McCarty, when he sold this timber to the defendant Spice Run Lumber Company, was a trespasser and wrongdoer; and that the plaintiff may waive his right to sue for damages for the trespass, and follow the proceeds derived from the sale of the timber, so long as the same can be identified, and so long as the rights of no innocent third party intervene. If the property involved in this case was the property of the plaintiff, then his equitable right to follow the proceeds of a sale of it by a wrongdoer, so long as he can identify such proceeds, can hardly be questioned. In equity such proceeds belong to the owner of the property, and they will be impressed with a trust in his favor so long as the same can be traced and definitely identified. 39 Cyc. 25. The fact that the plaintiff may have relief at law by a suit against McCarty, or against the Spice Run Lumber Company for damages, does not deny him the right to go into equity to secure the proceeds arising from a sale of his property. In this connection Mr. Justice Story in his work on Equity Jurisprudence, at § 1256, says: "It is true that Courts of Law now entertain jurisdiction in many cases of this sort, where formerly the remedy was solely in equity; as for example in an action of assumpsit for money had and received, where the money cannot conscientiously be withheld by the party; following out the rule of the civil law, '*Quod condictio indebiti non datur ultra quam locupletior factus est qui accepit.*' But this does not oust the general jurisdiction of Courts of Equity over the subject-matter, which had for many ages before been in full exercise, although it renders a resort to them for relief less common as well as less necessary than it formerly was." The theory upon which the courts

proceed is that a party dealing with the property of another will, in a court of equity, be treated as the agent of the real owner of the property, should the real owner desire to avow his acts; that while there may have been no relation of trust or of privity between them, if the real owner of the property desires to affirm a contract made by another for the sale or disposal of his property, he may do so in a court of equity, and such court will treat the wrongdoer as an agent *ex maleficio*. Story's Equity Jurisprudence, § 1255; Pomeroy's Equity Jurisprudence, § 1053. Cases are numerous in which this has been done, and it will suffice to cite but a few representative ones. In the case of *National Mahaiwe Bank* v. *Barry*, 125 Mass. 20, the bank filed a bill to impress a trust in its favor in certain property which had been acquired with its money. One of its employes had embezzled a large sum of money, part of which had been entrusted to another, and had been invested in real estate in the name of such other. The Supreme Judicial Court of Massachusetts held, in accordance with well established authority, that while the bank could sue the embezzling officer for the money, or could maintain a suit against the party to whom the money was turned over with knowledge that it was embezzled, and recover a judgment against either or both of those parties, it was not bound to do so. When it found property which had been purchased with its funds it had the right in a court of equity to impress that property with a trust in its favor, and to compel the relinquishment to the defendant of the specific property. So in the case of *Humphreys* v. *Butler*, 51 Ark. 351, it was held that where a party wrongfully collected money due another, and with that money purchased property, the true owner of the fund thus collected could in equity impress the property purchased with a trust in his favor, and it mattered not that he might in an action at law recover the fund. The holding is that the fund was always his, and that in equity the party who used it for the purchase of something else would be held to be acting as the agent of the real owner; and while the title to the property thus acquired was in the name of the wrongdoer, in equity it belonged to the actual owner of the fund which purchased it, and the wrongdoer would be compelled to

surrender the title. In *Newton v. Porter*, 69 N. Y. 133, it was held that where one stole negotiable securities and exchanged them for other securities, a court of equity would hold that the other securities belonged to the owner of the stolen property. A court of law would not so treat them, but in equity the owner of the property may elect to treat the wrongdoer as his agent, and compel the surrender of the property thus acquired. See also *Robinson v. Pierce*, 118 Ala. 273. Many authorities are cited in the opinions in the above cases which clearly establish the jurisdiction of courts of equity in cases like this. As was said by Lord Ellenborough in *Taylor v. Plumer*, 3 M. & Sel. 362, in speaking of the right of the owner of property to follow the proceeds thereof in equity: "It makes no difference, in reason or law, into what other form different from the original the change may have been made, whether it be into that of promissory notes for the security of money produced on the sale of the goods of the principal as in *Scott v. Surman* (Willes 400), or into other merchandise, as in *Whitecomb v. Jacob* (Salk. 160), for the product or substitute for the original thing, still follows the nature of the thing itself, so long as it can be ascertained to be such, and the right only ceases when the means of ascertainment fails."

But we need not go beyond our own borders for authority clearly upholding the jurisdiction of equity in such cases. In the cases of *Ballard v. Ballard*, 25 W. Va. 470, and *Barnett v. McAllister*, 33 W. Va. 738, this court sustained the jurisdiction of equity under very similar circumstances. It is attempted to distinguish those cases from the case here upon the facts. In those cases the owner of real estate, after making a sale of it by executory contract sold it to a third party. The court held that in such case the purchaser under the executory contract held the full equitable title to the property, and that the former owner, the holder of the legal title, was in equity a trustee for such purchaser under the executory contract, and when he sold the property to a third party such purchaser under the executory contract would in a court of equity be given the benefit of the contract thus made. It is stated that those are specific performance cases, and that

therefore equity has jurisdiction upon that ground. The court did not put it upon that ground in either of those cases, but put it squarely upon the ground that there was a constructive trust, that the wrongdoer was a trustee for the rightful owner of the property whether he would be such trustee or not. The case of *Hogg* v. *McGuffin,* 67 W. Va. 456, is on all fours with the present case. In that case McGuffin had executed to Hogg an option contract for the sale of certain stocks. Hogg elected to accept the stocks under the contract; McGuffin had, however, sold them to a third party, the proceeds of the sale consisting of certain negotiable notes being deposited in a bank by McGuffin. Hogg then filed a bill, not for the purpose at all of having specific performance of the contract, but for the purpose of impressing a trust upon the proceeds of the sale of the stocks in the hands of the bank, and this court held that he might do so. Judge BRANNON, in speaking for the court in that case, expressly says that the fact that there might be an adequate remedy at law does not deprive equity of the familiar jurisdiction to enforce a constructive trust in such a case. It is held in that case that because the stock was Hogg's the proceeds of the sale which were then in the bank, in equity belonged to Hogg. In this case, if the timber which has been cut and removed belonged to the plaintiff, in equity the proceeds of the sale of that timber belongs to the plaintiff, so long as such proceeds can be identified. See also *Wolf* v. *McGugin,* 37 W. Va. 552, and *County Court* v. *Cottle,* 81 W. Va. 469, 94 S. E. 948.

But it is contended that there is a controversy here as to the title to the timber, and that this controversy is one cognizable only in a court of law; that before the plaintiff could go into equity to follow the fund he would have to first settle in a court of law his title to the timber. This contention might be correct if the plaintiff's claim of title depended upon anything more than a construction of the title papers exhibited with the pleading. The title which he sets up and relies upon stands or falls with the construction given to the deeds and papers filed with his bill. It does not involve the trial of any question of fact, and where this is the case a court of equity is as competent to construe the papers and determine whether

or not the plaintiff places the proper construction upon them as is a court of law.  In the case of *Bradley* v. *Swope,* 77 W. Va. 113, the plaintiff sought to enjoin trespasses upon land claimed by him.  As to whether he or the defendant was the owner of the land depended upon the construction of the title papers, and the court held that where such was the case a court of equity would construe them, and if he was found to be the owner of the land administer him relief.  Judge WILLIAMS in speaking for the Court in that case says: "If, by a proper construction of his deed, plaintiff is entitled to the land bounded by the Long lines, then he has a right to maintain his bill, for although it appears the land in controversy is unenclosed, timber land, plaintiff's admitted possession of other portions of his tract extends his possession to its exterior bounds, no adverse possession being shown.  *Curtis* v. *Meadows,* decided at the present term.  There is no necessity for referring the question here involved to a court of law to be determined by a jury.  *Ephriam Creek Coal & Coke Co.* v. *Bragg,* 75 W. Va. 70, 85 S. E. 190.  And contra, if a proper construction of plaintiff's deed does not entitle him to the land in question, he could not recover in an action at law. His case, in either court, depends solely on the terms of his deed, which a court of equity has as much right to construe as a court of law, in a case properly before it."  So here we say that a court of equity is as competent to construe the title papers under which the plaintiff claims as is a court of law, and there being no other question involved, equity has jurisdiction to construe the title papers and administer the relief to which the parties are found to be entitled.

It remains then for us to determine the effect of the deed made by the trustee conveying this timber to the plaintiff's predecessor in title.  It is earnestly contended by the plaintiff that this deed conveyed the timber on the land without any conditions, reservations or limitations, while on behalf of the defendant it is contended that the conveyance was upon the condition that the timber was to be removed within three years from the day of the sale by the trustee.  It will be observed that the deed of trust made by McCarty to T. A. Bruffey, trustee, to secure Peck conveyed "all of the timber

on that certain tract or parcel of land lying and being in the county of Pocahontas, State of West Virginia.'' Then follows the description of the land. There is no limitation as to the time within which the timber is to be removed, nor is there any provision for forfeiture of the right upon the happening of any contingency, so that under the decision of this court in the case of *Keystone Company* v. *Brooks,* 65 W. Va. 512, an absolute estate in the timber vested in the trustee. Was the grantee in the deed under any obligation to remove the timber within any particular time? As to the character of the estate created by a deed such as this, and as to the obligation upon the grantee to remove the timber, the authorities in this country are irreconcilably in conflict. As to the character of the estate which passed, some of the courts hold that such a deed grants a mere license to remove timber from the land for a reasonable time. Others hold that it is a lease of the land for the purpose of timber operations thereon, and that the limit of time is such reasonable time as it would take to remove all of said timber if the operations were carried on in the ordinary way. Others hold that the deed is a conveyance of the timber and vests in the grantee the absolute title to the trees as part of the real estate. Still others hold that while the deed grants the timber it is a defeasible fee, and unless the grantee removes the timber from the land within a reasonable time after the title vests in him his title is defeated by the implied condition that the timber will be removed within such reasonable time. See *McRae* v. *Stillwell,* 55 L. R. A. 513; *Eastern Kentucky Mineral & Timber Co.* v. *Swann-Day Lumber Co.* 46 L. R. A. (N. S.) 672; *United States Coal & Oil Co.* v. *Harrison,* 71 W. Va. 217; 47 L. R. A. (N. S.) 870; *Peirce* v. *Finerty,* 29 L. R. A. (N. S.) 547; *Beatty* v. *Mathewson,* 3 B. R. C. 859; *Wilson Lumber Co.* v. *Alderman & Sons Co.,* 128 Am. St. Rep. 865; *Zimmerman Mfg. Co.* v. *Daffin,* 123 Am. St. Rep. 58; *Bond* v. *Ungerecht,* L. R. A. 1915 A. The extensive monographic notes appended to the reports of these cases fully cite and discuss the authorities on the various phases of the question, but it is impossible to reconcile them. A great many of the authorities hold that a deed such as this vests the timber absolutely and that the title thereto is not

divested by failure to remove it within a reasonable time, and this is the holding of our case of *Keystone Co. v. Brooks,* but that case does not decide what would be the result in case of a failure to remove the timber within a reasonable time. It is very uniformly held that there is an obligation to remove the timber within a reasonable time after the making of the contract. In many states where it is held that such a deed as this vests the title to the timber it is also held that if the grantee therein fails to remove the timber within a reasonable time after it is granted to him his title is not defeated. He still owns the timber but he cannot remove it. In other words, he would be guilty of a trespass if he goes upon the land to remove the timber after the expiration of that time. Neither can the owner of the land remove it. In these jurisdictions it is held that should the owner of the land attempt to cut the timber, the owner of the timber may enjoin him from doing so; and likewise if the owner of the timber attempts to go upon the land and remove it, his repeated trespasses in so doing may be enjoined by the owner of the land, so that the result of these decisions is that a condition is created which deprives both of the parties of any use whatever of their estates. The parties when they made the contract certainly never contemplated any such result. The purpose of courts in giving effect to contracts is to carry out the intention of the parties, and it is a long stretch of the imagination to say that the parties ever intended that a state of affairs would be created by their contract which would deprive both of them of their property. There are others of these cases which hold that the estate of the grantee is a defeasible fee, that is, the title to the timber upon the delivery of the deed vests in the grantee, subject to be defeated by his failure to remove it within such time as is reasonably necessary therefor by operations in the ordinary way. This uncertain condition confronted these parties when the contract was entered into between J. H. McCarty of the one part and T. A. Buffrey, trustee, and J. E. Peck of the other part, by which a period of three years was fixed for the removal of this timber. At that time nearly three years had passed since the execution of the deed of trust, and no operation had been carried on with

a view to the removal of the timber. A person proposing to purchase under the deed of trust might well hesitate when he was advised of these facts. The tract of land was a small one, and it might very reasonably be said that the grantee had had ample time within which to remove this timber, and any purchaser would get an estate of at least doubtful value. On the other hand, J. H. McCarty, who was the owner of the land encumbered with this deed of trust, might well be doubtful as to his right to forbid the removal of the timber, and with this uncertain situation confronting the parties why could they not make a contract by which their rights were rendered certain and definite? J. E. Peck, the cestui que trust, the trustee in the deed of trust, and the owner of the land were all parties to this contract. They were the only people who had any interest in the subject matter, and no reason is perceived why they could not make a valid and binding contract by which the security of Peck for his debt was made worth something, and the extent of the encumbrance upon McCarty's estate in the land was defined. It is true Peck did not sign the agreement, but a sale was made under the deed of trust, and under the agreement, and he took the benefit of it, so that while he did not sign it he became a party to it, not only because he was named therein, but because he accepted the benefits thereof, and then, too, the bill in this case alleges that he was a party to that agreement. It may well be said that it would be impossible to secure anything like an adequate price for the timber were the rights of the purchaser clouded as they would have been but for this supplemental contract, and it was very much to the advantage of Peck to secure such an arrangement in order that his debt might be paid upon a sale under the deed of trust. The purchaser under the deed of trust cannot complain for the reason that he purchased with the understanding, and with the full knowledge that the parties had made this contract, giving three years from the date of sale within which to remove the timber. Had the parties not made this contract, what rights would he have acquired at a sale under the deed of trust? Judge BRANNON, in the case of *Keystone Company* v. *Brooks*, says that there is, perhaps, obligation to remove the timber

in a reasonable time. The great weight of authority is that there is such an obligation. As before stated, nearly three years of that time had already expired without any operations. How much longer would it take to remove this timber by operations in the ordinary way? We are of the opinion that Peck and McCarty had the right, and it was entirely proper for them to enter into the contract of April 24, 1909, definitely fixing the rights of each of them in the subject matter referred to in that contract. Peck had security which under the circumstances was, if not entirely worthless, at least of very doubtful value. McCarty had an encumbrance upon his land, the extent of which was uncertain. By this contract Peck's uncertain security was turned into a valuable one, and the encumbrance upon McCarty's land was made definite and certain, so that he would have something by which to be guided in the future in regard to handling his estate, and when the purchaser purchased under this deed of trust and under this contract, and the deed to him shows that it was made in accordance with the deed of trust, and in accordance with the contract, and that the timber was to be removed within three years, if he would get the advantage of his purchase he must remove the timber within the time specified in the contract. *Null* v. *Elliott,* 52 W. Va. 229; *Adkins* v. *Huff,* 58 W. Va. 645. This he did not do. He allowed the time to go by, and has therefore lost all of the rights that he had under his purchase. Having no interest in the timber at the time it was actually cut from the land, he had no interest in the purchase money arising from the sale thereof.

The circuit court therefore committed no error in sustaining the demurrer to the bill, and its action is affirmed.

WILLIAMS, JUDGE, *(concurring):*

I concur in affirming the decree dismissing plaintiff's bill, but not for the reason given in the opinion. I do not think the bill presents a case for equity jurisdiction. It shows that the right to the fund in bank depends on the title to the timber from which it was derived and that the title was claimed adversely by J. H. McCarty and by Williams, Trus-

tee. Both were *bona fide* claimants, and McCarty sold the timber in good faith. How then can he be a trustee *in invitum* or *ex maleficio?* It is not unconscientious for him to retain the proceeds; in fact, he has a right to do so, unless the other claimant establishes a superior title. The *male fides* is the governing principle in all such cases, says Story in his work on Equity Jurisprudence, Sec. 1255. There is a wide and fundamental difference between this case and those cited in the opinion to support the decision, which the opinion fails to notice, and that is, McCarty's conscientious or *bona fide* claim of title. The cases cited from other jurisdictions are all cases where the defendant wrongfully misapplied property or funds which he recognized as the property of another and to which, at the time of misappropriation, he made no claim of title. There was no necessity in any of those cases, as there is here, for the court to determine a disputed question of title before deciding whether defendant was a trustee *ex maleficio*. In other words, the chancellor is called upon here to settle a disputed title, which should be decided by a court of law, in order to determine whether equity has jurisdiction to impress the fund with a trust.

The title to the timber was purely legal, the ownership depending on the proper construction of the trust deed from S. E. McCarty to Bruffey, Trustee, and of his deed to A. D. Williams, a question which a court of law was as competent to determine as a court of equity. *Poage* v. *Bell,* 3 Rand. 586. No equities are involved. The insolvency of neither J. H. McCarty nor the Spice Run Lumber Company is alleged, and by an action at law against either or both of them plaintiff had a full, complete and adequate remedy. Hence, there is no ground for equity jurisdiction. 1 Pomeroy's Eq. Jur., Sec. 130. No privity of contract existed between plaintiff and any of defendants and no relation of trust express or constructive. The bill does not disclose whether plaintiff was a party to the arrangement with the bank or not. Presumably it was made between J. H. McCarty and the Spice Run Lumber Company only for the latter's protection. But even if plaintiff had been a party to it, that would not change the situation so as to give equity jurisdiction of a suit by plain-

tiff to determine the title to the timber or the fund derived from it, even though equity might have entertained a bill of interpleader by the bank. The timber was severed and converted into personalty before the suit was brought, and full compensation therefor was obtainable by means of a judgment at law. Plaintiff claims the fund on the sole ground that legally he was the owner of the timber and McCarty, who sold it, was not, thus presenting a state of facts which furnishes a basis for one of the most familiar actions cognizable in a court of law. He cannot, by electing to treat the sale as having been made for his benefit, confer jurisdiction on a court of equity. The property from which the fund was derived must necessarily have been impressed with some equity to entitle him to equitable relief. "Where personal property is conveyed by deed of trust, and a claim is set up by a third person, a Court of Equity ought not to injoin a sale under the deed, but should leave the party to his legal remedy." 3 Rand. 586. In *Sheppard* v. *Turpin*, 3 Grat. 363, property held under a deed of trust was sold under execution at the instance of a party not claiming under the trust deed, and the court held that equity would not entertain a suit by either the trustee or *cestui que trust* against the purchaser for the recovery of the property, on the ground that there was no obstacle to their proceeding at law. If he could not pursue the property itself in equity, I do not see how he could have any better right to follow the fund. See also *Kuhn, Netter & Co.* v. *Mack & Bros.*, 4 W. Va. 186; and *Bowyer* v. *Creigh*, 3 Rand. 25, both cases in point.

In *Franks* v. *Cravens et al.*, 6 W. Va. 185, a deed of trust to secure a debt had been given upon a tract of land on which was located a boiler, engine and other machinery, used in connection with a sawmill. These articles were removed to another tract of land, another deed of trust given on them to secure a debt of another party, and they were subsequently sold under the second trust deed, whereupon the *cestui que trust* under the first deed of trust filed his bill in equity against the purchaser to compel restoration of the property to himself or his trustee, on the ground that it was trust property and was bought with notice of the facts. The court

held that, although the property may have been real estate at the time the first trust deed was given, it was converted into personalty, as between the creditor and third parties, by its removal, and because plaintiff had a complete remedy at law for its recovery, equity could give no relief.

Other authorities supporting the proposition that equity is without jurisdiction in the present case are the following: 1 Pom. Eq. Jur., Sec. 176; 2 Pom. Eq. Jur., Sec. 424; *Fussell* v. *Gregg*, 113 U. S. 550; *Young* v. *Porter*, 3 Woods (U. S. C. C.) 342; *Cole* v. *Mette*, 65 Ark. 503, 67 Am. St. Rep. 945; *Galt* v. *Galloway*, 4 Peters 332; *Bassett* v. *Brown*, 100 Mass. 355; *Clausen* v. *Lafrenz*, 4 G. Greene, (Iowa), 224; *Morgan* v. *Palmer*, 48 N. H. 336; *Kimball* v. *Grafton Bank*, 20 N. H. 347; *Curtis et al.* v. *Blair*, 26 Miss. 309; *Vick* v. *Percy*, 15 Miss. 245; and *Hipp* v. *Babbin*, 19 How. 271.

*Ballard* v. *Ballard*, 25 W. Va. 470; *Barrett* v. *McAllister*, 33 W. Va. 738; and *Hogg* v. *McGuffin*, 67 W. Va. 456, are cited to support equity jurisdiction in the present case. But each of them was a suit to compel specific performance, a remedy peculiarly equitable. Two of them involved contracts for the sale of land, and the third, and last named, an option to purchase stock in a corporation, of peculiar value to plaintiff. Plaintiff had complied with the conditions, but defendant had sold the stock to an innocent purchaser for value, thereby putting it out of his power to comply with his contract. Compliance being impossible, the court there properly gave plaintiff a decree for the proceeds of the sale of the stock as an alternative, on his prayer for general relief, on the ground that Hogg's option to acquire the stock imposed on McGuffin the duty to retain it so as to be able to comply with his contract in case Hogg should elect to take it within the life of his option. It was impressed with a trust by virtue of the contract. Moreover, McGuffin's insolvency was alleged and proven, therefore, his legal remedy was not adequate. In all three of those cases the subject-matter of suit was an equitable claim or title, pure and simple, and the relief sought could be obtained only in a court of equity.

*Wolf* v. *McGugin*, 37 W. Va. 552, was a suit to avoid a preference which an insolvent debtor sought, by a sale of his

property, to give to one of his creditors who, together with another, had become the purchaser thereof, in violation of Sec. 2, Ch. 74, Code. Jurisdiction in equity was sustained in *Raleigh County Court* v. *Cottle,* 81 W. Va. 469, 94 S. E. 948, on the ground of discovery, and accounting for public funds, involving settlements between Cottle and said court, in which different sets of sureties on his official bonds were liable for funds coming in to his hands at different periods of time during his administration as sheriff.

I find no authority in the books anywhere, in those jurisdictions where the distinction has been preserved between courts of law and courts of chancery, as it was originally established by a long course of practice in England, for the proposition that, where one of two adverse claimants of the legal title to property, whether it be real or personal, sells it, the other claimant can invoke the aid of a court of equity to recover the proceeds. It is a principle too firmly established to require any citation of authorities, that jurisdiction of a cause cannot be conferred by consent.

There is no better argument to show the lack of equity jurisdiction than the conclusion reached by the opinion itself. After holding that equity has jurisdiction, at the suit of the owner of property, to pursue the fund derived from a sale thereof, wrongfully made, it reaches the conclusion that plaintiff had no title to the property when it was sold. I do not deny the correctness of the conclusion as a legal proposition, but I do deny our jurisdiction to decide it in this case, and would simply affirm the decree for the same reason the lower court sustained the demurrer to plaintiff's bill and dismissed his suit, that is, for want of jurisdiction in equity.

*Affirmed.*