# CHARLESTON.

KEYSTONE MANUFACTURING CO. v. W. N. FISHER.

Submitted September 24, 1918.    Decided October 1, 1918.

TRUSTS—*Investment of Funds of Another—Jurisdiction to Compel Disclosure.*

Where one entrusts funds to another for the purpose of purchasing a particular kind of property for him, and such other invests such funds in such property, and takes the title thereto in his own name, he becomes a trustee for the party for whom he was acting, holding the title to such property for his benefit, and where the real owner is not advised as to the quantiy, location or exact character of the property so purchased, a court of equity has jurisdiction to compel such trustee to disclose the same, and to deliver the property or convey the title thereto to the real owner.

Certified questions from Circuit Court, Randolph County.

Bill by the Keystone Manufacturing Company against W. N. Fisher.    Demurrer to the bill overruled, and ruling certified to the Supreme Court.

*Demurrer held properly overruled.*

*S. T. Spears,* for plaintiff.

*W. B. & E. L. Maxwell,* for defendant.

RITZ, JUDGE:

By a contract entered into on the 1st day of March, 1918, the defendant, in consideration of certain prices to be paid to him by the plaintiff, agreed to manufacture for the plaintiff certain material used in ship building known as treenails, which are nothing but locust pins used for fastening ship timbers together.    Under the contract the defendant was to do all the necessary labor and furnish all the necessary material to manufacture into such treenails, as per government specifications, the locust timber tributary to the Central West Virginia & Southern Railroad in Randolph and Tucker counties, and to receive therefor the compensation provided in the contract.    The plaintiff on its part agreed to furnish to the defendant, for the purpose of the manufacture, two mills, and agreed further to take all of the treenails manu-

factured by the defendant, and agreed also to advance money to the defendant to purchase the timber out of which said treenails were to be manufactured, such timber, when so purchased, to be the property of the plaintiff. The defendant agreed to manufacture and deliver not less than six cars of such material per month, and also agreed not to sell any of such material manufactured by him to any person except the plaintiff, and the plaintiff on its part agreed not to buy any of such material upon the line of the above-named railroad except from the defendant. This contract, by its terms, expired on the 30th day of June, 1918. The bill alleges that the plaintiff did turn over to the defendant under the contract the two mills provided; that it made numerous advancements to the defendant for the purpose of purchasing locust timber; and that the defendant did purchase a large amount of locust timber, some of which he manufactured into treenails under the contract, which were delivered to the plaintiff; that he continued operations under the contract and in accordance with its terms until the 30th day of June, 1918; that sometime before the expiration of said contract the parties agreed to an extension thereof, upon the terms provided therein, except as to the price to be paid the defendant, as to which there was a considerable increase over the price provided in the contract aforesaid. The bill avers that under this extension the defendant continued to manufacture these treenails and deliver them to the plaintiff, and also received considerable advancements for the purpose of purchasing additional timber, such advancements amounting to eight thousand dollars from the first of July to the 20th of July, and with these advancements the defendant purchased and contracted for a large amount of locust timber tributary to the line of the railroad aforesaid, some of which he has cut and manufactured into bolts ready to be shipped to the mill for the final process of manufacture, a large amount of which, however, still remains in the woods or on the stump uncut, and that the plaintiff is not advised as to how much of such timber there is, nor from whom the purchases were made. That on the 20th day of July, 1918, the defendant, in violation of his contract aforesaid, ceased to manufacture these

treenails for the plaintiff, and proceeded to cut and deliver the timber he had purchased for plaintiff under the contract to another. The bill prays that the defendant be enjoined from removing any of the timber which has been cut into bolts ready for shipment to the mills, and that he be required to deliver to the plaintiff such thereof as he has removed, and any treenails which he has manufactured therefrom; that he be enjoined and restrained from cutting any of the locust timber negotiated for and purchased by him tributary to the Central West Virginia & Southern Railroad while he was acting for and on behalf of the plaintiff under the contract aforesaid; and that he be required to disclose under oath what timber he has so purchased, and to disclose under oath all wood and timber for which he negotiated and contracted prior to July 20th; and that he be required to transfer to the plaintiff the right, title and interest therein now vested in him; and that he be enjoined from selling or delivering any of the treenails which he has manufactured from said timber so purchased by him, while he was acting under the contract aforesaid, to any other person than the plaintiff.

A demurrer to this bill was overruled, and the propriety of this ruling of the circuit court is certified here. It will be observed that the contract involved in effect created the defendant the agent of the plaintiff for the purpose of purchasing this locust timber and manufacturing it into treenails. The plaintiff furnished the mills for the purpose; it furnished the money to the defendant for the purpose of buying the timber; the timber, when bought, was to be the property of the plaintiff, and the defendant was not to sell or dispose of this timber, or any of its products, to anyone else than the plaintiff; and the bill in this case seeks to prevent the defendant from doing this very thing, and to hold the timber and compel its delivery to the plaintiff. It seems to be quite well settled that where one entrusts another as his agent with property to be used for his benefit, upon the termination of the agency such agent will be required to account for all property which was turned over to him, and to re-deliver it to his principal; and if he has converted it into some other form the principal may in equity follow the

property in its changed condition. *Williams* v. *McCarty,* 82 W. Va. 158, 95 S. E. 638; *County Court v. Cottle,* 81 W. Va. 469, 94 S. E. 948. In Meacham on Agency, §2576, it is said: ''Notwithstanding the consignment to the factor or his advances upon them, the goods still remain the property of the principal, and so continue until lawfully sold by the factor. They cannot be taken for the factor's debts, nor appropriated by him to their payment, nor, except by virtue of a statute, can they be pledged as security for his private demands. Neither, as in other like cases, can the factor, without his principal's consent, be permitted to sell to himself, or to a third person in trust for himself. Property so disposed of, or its value, may be recovered by the principal. So the factor stands in the situation of a trustee for his principal, and if the principal can trace his property, whether it be the identical article which first came into the factor's possession, or other property purchased for the principal by the factor with the proceeds, or if, upon the sale, the factor has taken notes or other securities for the price, the principal may follow and recover the property or its proceeds either in the hands of the factor or of his legal representatives, or of his assignee if he should become insolvent or bankrupt, or in the hands of a third person who has taken it with notice of the trust or without consideration.'' The same doctrine is laid down in 39 Cyc., p. 528, and in 2 Cor. Jur. at page 736. The averment in the bill in this case shows that the defendant with the plaintiff's money acquired considerable quantities of this locust timber, and took the title thereto in his own name. Under the authorities above cited he is but a trustee holding the title to this property for the plaintiff, and it is entirely proper for a court of equity to compel the defendant to disclose the property so purchased by him under the contract, and to impress it with the trust existing in favor of the plaintiff.

We think the bill makes a good case for the interposition of a court of equity, and our answer to the question certified is that the demurrer was properly overruled.

*Demurrer held properly overruled.*